## Case No. 502.

### ARAPAHOE COUNTY v. KANSAS PAC. RY. CO. et al.

[4 Dill. 277;[1] 5 Cent. Law J. 102; 9 Chi. Leg. News, 369; 4 Law & Eq. Rep. 181.]

Circuit Court, D. Colorado. 1877.

REMOVAL OF CAUSES—CITIZENSHIP—ACT OF MARCH 3, 1875—"CONTROVERSY"—SUIT.

1. The plaintiff, a citizen of Colorado, brought a stockholder's bill in a state court, in Colorado, making the defendants thereto the railroad company (also a citizen of Colorado), in which the plaintiff was a stockholder, viz.: the Denver Pacific Railway Company, and also the directors thereof, including two directors, citizens of Colorado; against whom, however. no charges were made, and no relief asked; also making a defendant another railroad company, viz.: the Kansas Pacific Railway Company (a citizen of Kansas), and certain individuals, all citizens of other states than Colorado. The object of the bill was to secure an accounting in favor of the Denver Pacific Company against the Kansas Pacific Company, and to secure a decree in personam against the non-resident directors of the Denver Pacific Company. The Kansas Pacific Company, and the individual defendants connected with that company, without being joined with the other defendants, applied to remove the suit to the circuit court of the United States, under the act of March 3, 1875: *Held*, that the suit was removable.

2. The right of removal cannot be defeated by the joinder as defendants of citizens of the same state with the plaintiff, if no relief is prayed against them, and they are made defendants without any right or reason or just cause.

[Approved in Walden v. Skinner, 101 U. S. 589. Cited in Donahoe v. Mariposa Land & Min. Co.. Case No. 3,989; Pond v. Sibley, 7 Fed. 135; M'Henry v. New York, P. & O. R. Co., 25 Fed. 69; May v. St. John, 38 Fed. 771; Dow v. Bradstreet Co., 46 Fed. 827. Distinguished in Mills v. Central R. Co., 20 Fed. 451; Belding v. Gaines, 37 Fed. 820.]

3. In a stockholder's bill of the kind before the court, the company in which the plaintiffs are stockholders is a necessary party defendant, but the interests of the stockholders and the company are identical, and they represent one side of the controversy, and the company against whom the accounting and relief are sought represents the other.

[Cited in Barry v. Missouri, K. & T.. Ry. Co., 27 Fed. 2.]

4. The removal act of March 3, 1875, provides that the suit—the whole suit, and not a part of the suit—shall be removed; and under that act, if the requisite conditions exist, any one of the plaintiffs or defendants may remove the suit and carry the other parties with them.

[5. Act March 3, 1875, (18 Stat. 470,) does not repeal all acts on the same subject, but only such as are in conflict; so that Act March 2, 1867, (14 Stat. 558, c. 196,) concerning local prejudice as a cause for removal, remains in force.]

[Cited in Dennis v. County of Alachua, Case No. 3,791.]

In equity. This suit was brought in the district court of Arapahoe county, by the complainants, against the Kansas Pacific Railway Company, the Denver Pacific Railway and Telegraph Company, Sayre, Moffat, Carr, Perry, Meier, Edgerton, Greeley, Dodge, Gould, and Dillon. The 'defendants, the Denver Pacific Railway Company, Sayre, and Moffat, are and were, with the complainants, citizens of the state of Colorado; the defendants, Dodge, a citizen of Iowa, and Gould and Dillon, citizens of New York. The three last named were not served with process, nor have they entered an appearance in the suit. The Kansas Pacific Railway Company, a citizen of Kansas, Carr, Perry, Meier, Greeley, and Edgerton, citizens of Missouri, united in a petition, accompanied by a sufficient bond, to the district court of Arapahoe county, for the removal of the suit into the circuit court of the United States for the district of Colorado. The judge of the state court indorsed his approval of the sufficiency of the bond, but declined to make an order for the removal of the cause. Nevertheless, the petitioners, in accordance with the conditions of their bond, filed, on the first day of the term of the circuit court of the United States, a certified copy of the pleadings and proceedings in the suit had in the state court, with the clerk of the circuit court, who docketed the cause as one properly removed; whereupon the complainants appeared and moved the circuit court to remand the cause to the state court, on the ground that the cause had been improperly removed from the state court. The attention of the court was not directed to the fact that the state court had declined to make an order for the removal of the suit. The issues tendered by the bill are fully stated in the opinion of the court.

Wm. B. Mills, John I. Redick, and Charles R. Redick, for plaintiff.

Alfred Sayre, John P. Usher, and A. H. Holmes, for defendants.

MILLER, Circuit Justice. The case of the board of county commissioners of Arapahoe county against the Denver Pacific Railway and Telegraph Company, and the Kansas Pacific Railway Company, and various individuals mentioned, presents a question of the jurisdiction of· this court arising under the act of [March 3] 1875, [18 Stat. 470,] and especially that branch of it which concerns the removal of cases from state to federal courts. The construction of this statute, in various respects, has been very largely the subject matter of my consideration and action on the circuit during this spring and summer.

It was very aptly remarked here, in the course of the argument on the motion to remand this case to the state court, that the act was intended and was understood to have been passed for the purpose of developing substantially all the judicial powers which the constitution conferred upon the government of the United States. The con-

---

[1][Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

stitution, while it declares to what the judicial power of the government shall extend, created no court except the supreme court of the United States; and it declared in no manner where that jurisdiction should be vested, except that the supreme court of the United States should have a certain class, which was as to the original jurisdiction very limited, and as to appellate jurisdiction was to be regulated in such manner as congress might determine. It was therefore necessary, for the exercise of all jurisdiction, except that which was directly conferred upon the supreme court of the United States, that some action of congress should create courts in which that jurisdiction should be vested. Congress has created these courts, and it has from time to time made various declarations of what their jurisdiction shall be. The original act of [September 24,] 1789, [1 Stat. 79, § 12,] (called the judiciary act, for the reason that it did attempt and was intended to create courts and invest them with so much of this jurisdiction as in the wisdom of congress ought to be exercised at that time), did not fill the measure of the judicial power of the federal government. The main body of this as to original jurisdiction was vested in the district courts and circuit courts. That of the district courts was confined in a large measure to criminal jurisdiction of the federal power, with an exclusive jurisdiction in admiralty cases. To this has since been added exclusive jurisdiction in bankruptcy. The circuit court, however, was the main depository of the power as regards the original jurisdiction of the federal courts. But all of the power which congress might have conferred on these courts, either separate or united, was not developed. They specified a limited class of cases, and for the purposes of this suit I may say that the main source of the jurisdiction of the circuit court of the United States was originally contests between citizens of different states, as it is to-day. Congress provided two modes by which jurisdiction might be exercised in the circuit courts of the United States; one by a suit brought there, and in which it was necessary in the declaration, or petition, or bill by which the suit was instituted, to describe the citizenship of the parties, so that the court could recognize that it had jurisdiction of the case. In the construction of that statute the supreme court of the United States decided, in the case of Cohens v. Virginia, 6 Wheat. [19 U. S.] 264, and has always adhered to this to the present time, that, in bringing suit by original process in the circuit court of the United States, all the parties plaintiff and defendant must have the required citizenship —to be more explicit, that all of the parties plaintiff must be citizens of a state or states different from all and each of the parties defendant, and that if either of the parties plaintiff and either of the parties defendant were citizens of the same state the juris-

diction failed. That has been the uniform construction of the act of congress upon the subject.

There was another mode by which the circuit courts acquired jurisdiction of cases. which has been called the original jurisdiction, because it does not fall within the ground of appellate jurisdiction, and this is by removal of cases brought in the state courts of which the state courts had concurrent jurisdiction with the courts of the United States. If a suit was brought in a state court, which, in the arrangement of parties as plaintiffs and defendants, might with equal jurisdiction have been brought in the circuit court of the United States, the act of 1789 provided for a removal of that suit to the circuit court of the United States, upon the application of the party who was not a citizen of the state where the suit was brought. The terms and time and manner of removal were limited. That act remained unrepealed and without substantial modification for a great many years. But about the time of the late civil war in this country it became the policy of congress to enable parties, citizens of different states, for reasons readily imagined, to remove a class of cases not included in the original act, and to remove them at times and under circumstances which could not be done under that act; and from that date to 1875 the statute has been undergoing continual modification and changes. The final act is the one under which the removal is sought in this case from the state court of Arapahoe county, Colorado, into this court.

The suit in this case is brought, as the parties concede, and as the petition shows, by the commissioners of the county of Arapahoe, who are citizens of the state of Colorado, against the Denver Pacific Railway and Telegraph Company, which is also a citizen of Colorado, and against two gentlemen, Mr. Sayre and Mr. Moffat, who are citizens of Colorado, and against seven or eight other persons, who are citizens of other states than Colorado. The case has been removed to this court upon a petition setting forth substantially these facts, and it is now asked to be remanded because the requisite essentials, as prescribed by the act of congress conferring jurisdiction upon this court, are not found in this case. The objection is that the Denver Pacific Railway and Telegraph Company, Sayre and Moffat, are citizens of the same state with the complainants in this action. This objection, as before stated, has always been considered decisive against the jurisdiction of this court; [that unless the parties on each side, each and all of them, have the required citizenship, this court is without jurisdiction.][1] Where the complainant and defendant are both citizens of the same state, this court has no jurisdiction. It is further alleged,

---

[1][From 5 Cent. Law J. 103.]

in support of the objection to the jurisdiction of this court in this case, that the Denver Pacific Railway Company, and Sayre and Moffat, each of them, are necessary adverse parties to the complainants in this suit. The objection, if well taken, will require the suit to be remanded.

The reply is that the Denver Pacific Company, and Sayre and Moffat, are nominal parties, against whom no relief is sought, and against whom no decree can be rendered; that the bill is clear and specific on that point; consequently the right which belongs to the other parties to remove the case is not and cannot be defeated by the joinder in the petition of other defendants, citizens of the same state with the complainants, against whom no relief is prayed. As regards Sayre and Moffat, the case seems very clear. A careful reading of the bill shows that no relief can be had against them. No case is made in the bill against them, nor does it appear that any was intended to be made. They are carefully distinguished from the other trustees against whom the relief is asked. No relief is asked against the corporation of which they are directors, nor is the relief asked against all the directors of the road. Not only so, but the complainants are very careful to show in their bill that there is no cause of action, or anything asked against these two directors. The charges are against the majority of the board of trustees of the Denver Pacific Railway Company; the decree asked is a decree in personam against the majority of the trustees, and not against the whole board. It is perfectly clear that no possible decree can be had, nor any charge of misconduct or maladministration be sustained, against Sayre and Moffat, as nothing is alleged against them. They are, therefore, entirely immaterial parties, and may be regarded as out of the case.

The supreme court has decided that where there are merely formal parties, without the requisite citizenship, that does not oust the jurisdiction. But in this case they are hardly formal parties, and it is hard to see why they were put into the bill at all; for it charges that they protested against the wrong while it was being done.

It would be a very dangerous doctrine, one utterly destructive of the rights which a man has to go into the federal courts on account of his citizenship, if the plaintiff in the case, in instituting his suit, can, without any right or reason or just cause, and with the express declaration that he asks no relief from them, join persons who have not the requisite citizenship, and thereby destroy the rights of the parties in federal courts.

We must, therefore, be astute not to permit devices to become successful which are used for the very purpose of destroying that right. In this case there is no question but that these two gentlemen—Sayre and Moffat—are in no sense in the way of the removal of the case, though they be citizens of the same state as the complainant.

The case then rests upon the question of whether the fact that the Denver Pacific Railway Company is a party defendant, and is a citizen of the same state of the party plaintiff, ousts the jurisdiction of this court or defeats the right of removal of the other parties who are citizens of other states. That question does not rest upon the same principle as the case of Messrs. Sayre and Moffat. The Denver Pacific Railway Company is a necessary party to this suit; it is one without which the suit cannot proceed. The main object of this suit, aside from obtaining a temporary injunction, and the appointment of a receiver, is to obtain an accounting with the Kansas Pacific Railway Company and other defendants, on an allegation that a majority of the trustees of the Denver Pacific Railway Company have been committing frauds, and thus depriving that company of the funds belonging to it. The relief sought is an accounting, and the relief asked is a decree in favor of the Denver Pacific Railway Company for the amount found due upon that accounting. The Denver Pacific Railway Company is a necessary party to that accounting. A party cannot be required to go to all the trouble of accounting and having a decree, when that accounting and decree will not be a valid defence against the principal party having the right to call such party to account. If the suit was merely between the county commissioners and these trustees, the decree would not protect the trustees, whether they were decreed to pay over moneys, or whether they were discharged or acquitted. It would be no protection against the Denver Pacific Railway Company in another suit upon the same cause of action. This shows very clearly that the Denver Pacific Railway Company is not a mere nominal party, but is an indispensable party. But, as already stated, the main relief sought in this case will be, if the suit is successful, a decree in favor of the Denver Pacific Railway Company for the amount found due from the other defendants in this case. That is an important and significant feature of the transaction. In an action at law a suit could not be maintained in which the board of commissioners of Arapahoe county should be plaintiffs, and the Denver Pacific Railway Company and these petitioners defendants, in which a judgment should be asked for one hundred thousand dollars in favor of the Denver Pacific Company against itself and its co-defendants. The court would say, you cannot make two defendants litigate before a jury and get a verdict as between themselves, while the party who brought the suit looks on as having no interest in the transactions. But the flexibility of the mode of proceedings in a court of chancery is such that,

for the attainment of justice, you may, in some instances, where the party is not before the court, make him a defendant, when he will not be a plaintiff. You cannot compel him to hazard the results of a defeat, though his presence in the court may be necessary for the rights of somebody else, and his rights be with the plaintiff in the case. In suits at common law he would be there as plaintiff, if there at all. By the rules and practice in equity the court allows him to be defendant in the case; but the mere fact that he is placed as defendant instead of plaintiff in a suit in chancery, never changes his relation to the controversy in the case, and it is very clear that the interest of the Denver Pacific Railway Company is the interest of the plaintiffs; that their interest is identical—that the board of county commissioners are using the name of the Denver Pacific Company to carry on this suit solely for the benefit of that company. The Denver Pacific Company, being in the control of the defendants, refused to bring this suit, and the complainants, stockholders of that company, were of necessity compelled to make it defendant, that it might be brought before the court; but when before the court, the company is entitled to recover against the other defendants. The complainants recognize this themselves, for in their prayer for relief they say expressly what they pray for is a decree in favor of the Denver Pacific Railway Company against the Kansas Pacific Railway Company and the other defendants. Now, the controversy in this case is one in which the commissioners of Arapahoe county and the Denver Pacific Railway Company are on one side, citizens of the state of Colorado, against all the other defendants. And all the other defendants are citizens of other states, except Sayre and Moffat, and the controversy, in the language of the constitution and of the statutes, is one between citizens of the state of Colorado and citizens of other states, and therefore within the meaning of the constitution of the United States, and within the meaning of the statute under which this removal is sought. The statute says, in the second section, "that any suit of a civil nature, at law or equity, now pending or hereafter brought in any state court, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and arising under the constitution or laws of the United States, or treaties made, or which shall be made under their authority, or in which the United States shall be plaintiff or petitioner, or in which there shall be a controversy between citizens of different states, or a controversy between citizens of the same state, claiming lands under grants of different states, or a controversy between citizens of a state and foreign states, citizens or subjects, either party may remove said suit into the circuit court of the United States for the proper district; and when, in any suit mentioned in this section, there shall be a controversy which is wholly between citizens of different states, and which can fully be determined as between them, then either one or more of the plaintiffs or defendants, actually interested in such controversy, may remove said suit to the circuit court of the United States for the proper district."

The best judgment I am able to give is that this is a controversy between citizens of the state of Colorado on one side, and citizens of other states on the other side, and is properly subject to removal.

Another objection, and the last one taken in the argument, was, that all of the parties defendant, who are citizens of other states, have not united in asking this removal, and that it requires the union of all these parties in the request that it should be done. The decisions of the courts were that, under the former statutes, it did require all the defendants, or the parties who were classed on the same side as regards citizenship, to unite in the petition for removal, or the suit could not be removed. But the act of 1875 intended to make a different rule upon the subject, and, in my judgment, it was the purpose and intent of the last clause of that act to enable one man, where all the parties on his side of the controversy had such citizenship as to authorize a removal, to have the case removed, and with it to carry all other parties. The language of the statute on that subject is very clear: "And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states"—which is so in this case—"and which can be fully determined as between them, then either one or more of the plaintiffs or defendants"—not all of them—"actually interested in such controversy may remove said suit." The argument is, that where less than the whole number on the same side made application, it could be removed as to them only, if they had a separate or special interest which could be determined between them and the plaintiffs. But it is the suit that is intended to be removed under this clause, and congress provided that one plaintiff or one defendant could remove the suit. I have decided that the act of [March 2] 1867, [14 Stat. 558, c. 196,] concerning prejudice, remains in full force. The reason is, that the act of 1875 does not repeal all acts on the same subject, but only such as are in conflict. It is very guarded. It is not in conflict with the provisions of this act that one of the defendants may, under the act of 1866, remove the cause as to himself. They are supplementary rights. To say that, where the case can be removed as a whole, it should be removed, but where, from its essential nature, it cannot be removed as a whole, and a part can be removed, that part shall be removed, is not in conflict; so that the two statutes stand together, and are not in conflict, just as I held under the act of

1867. In all cases of removal under the act of 1875, application must be made at the first term, or before the term at which the suit could be tried or heard. No such provision is made in the act of 1867, or in that of [July 27,] 1866, [14 Stat. 306.]

I am, therefore, of the opinion that the fair construction of the act, taken in connection with the general policy of the statute to give very nearly all the jurisdiction which the constitution of the United States intended to belong to the federal judicial power, requires that this case shall remain where it is; and the motion to remand it is denied.

Motion denied.

---

ARBOR. The ANN. See Cases Nos. 407 and 408.

ARBUNCLE, (BOWNE v.) See Case No. 1,-742.

ARBUNKLE, (BROWN v.) See Case No. 1,-999.

ARBUSTCI, The, (JUSTI PON v.) See Case No. 7,589.

ARCHBOLD, (GERMAN SAV. BANK v.) See Case No. 5,364.

ARCHEMBROUN, In re. See Cases Nos. 503, 504, and 505.

ARCHENBRAUN, In re. See Cases Nos. 503, 504, and 505.