## NEWMAN v. SCHWERIN.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1894.)

### No. 161.

**1. DESCENT AND DISTRIBUTION—ACTION BY SOLE DISTRIBUTEE.**

The sole distributee of an intestate, who does not allege that there is no administrator and no creditor, cannot maintain a bill against the intestate's agent, who, in enforcing a judgment in favor of the intestate, purchased lands of the judgment debtor on execution sale, and refuses to account, whether the recovery sought be a money decree, or a recovery of the land, or an interest therein as realty.

**2. APPOINTMENT OF ADMINISTRATOR AD LITEM—REVIEW OF INTERLOCUTORY DECREE.**

Under Act Tenn. 1889, giving chancery courts special power in a proceeding therein to appoint an administrator ad litem, if there is no executor or administrator, or if he is interested adversely, an interlocutory decree making such appointment, although it recites that it appears that there is no administrator or executor, cannot be sustained, when brought up for review by appeal from the final decree, in the absence of any allegation or evidence in the record to support such recital.

**3. PARTIES—ACCOUNTING—BENEFICIARIES UNDER TRUST.**

By a clause in a power of attorney to sell certain lands and enforce certain judgments, the maker of the instrument bound himself to divide the proceeds, three-fourths among the heirs of his deceased brother, one-fourth to be retained by himself. He died intestate, leaving said heirs of his deceased brother his own heirs at law. *Held,* that they were necessary parties to a bill to reach lands held by the attorney named therein as proceeds of enforcement of a judgment under said power, whether said lands were to be regarded as personalty or realty for purposes of descent and distribution.

**4. REMOVAL OF CAUSES—TIME OF APPLICATION—WAIVER OF OBJECTION.**

In a suit between citizens of different states, although the petition for removal is not filed until after a demurrer is interposed in the state court, if no motion to remand on that ground is made in the circuit court, the objection is waived, and cannot be made on appeal.

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

This was a suit by Lena Newman against Morris Schwerin for an accounting. The circuit court dismissed the bill. Complainant appealed.

John J. Tracy and John H. Cother, for appellant.

Pritchard & Sizer, for appellee.

Before TAFT and LURTON, Circuit Judges, and BARR, District Judge.

LURTON, Circuit Judge. This bill was filed in the chancery court for Cumberland county, Tenn. The object of the bill was to have an accounting with the defendant, Schwerin, as attorney in fact for Samuel Newman. The power of attorney was as follows:

"State of Mississippi, County of Hinds.

"Be it known that I, Samuel Newman, of the county and state above named, do hereby constitute and appoint M. Schwerin, of the city of Newark, state of New Jersey, my attorney in fact, with the following powers: (1) To sell, convey, lease, or rent any and all the land that I own, or in which I have any interest, situated and being in the counties of White, De Kalb, and

Putnam, in the state of Tennessee. (2) To sell, assign, execute, or enforce a certain judgment or decree rendered in the year 1860 in my favor, against the North American Coal & Transportation Company, by the chancery court of White county, in the state of Tennessee, or any other judgment or decree rendered by said court in my favor, condemning the sale of any land. (3) In case it should be necessary to resort to legal proceedings in order to recover possession of said land, or to enforce or to execute said decree or decrees, the said Schwerin is hereby authorized to sue in my name, and to do all things necessary to accomplish these desired ends. (4) It is, however, expressly stipulated and agreed that the said Schwerin is to receive no pay from me for his services, and he is to pay and be responsible for all costs, expenses, and risks incurred by him while in the execution of his powers. (5) In case the said Schwerin should be successful in the enterprise by us contemplated, and be able to sell said lands and enforce said decrees, then he is to reimburse himself for all legitimate expenses by him incurred; and the rest of the proceeds I hereby bind myself, and promise, to divide into four equal parts, three of which shall be distributed among the heirs of my deceased brother, Charles Newman, and one shall I retain myself.

"Witness my signature, this the sixth day of February, 1886.

"Samuel Newman."

The bill, in substance, alleged that, in pursuance of the power therein conferred, the defendant had instituted a suit upon the judgment mentioned therein in the chancery court of White county, Tenn., and that on May 12, 1886, a decree had been obtained in favor of said Samuel Newman and against the said North American Coal & Transportation Company for the sum of $58,000 and costs of suit; that said Schwerin, still acting under his said agency and trust, had caused an execution issuing on said judgment to be levied on a number of tracts of land in Cumberland county, Tenn., as the property of the judgment debtor; that at the sale thereof under said writ and levy the lands thus levied on had been sold for a sum aggregating $38,740, and sheriff's deed executed to the several purchasers; that said Schwerin had by virtue of his said agency credited on the said judgment an amount equal to the aggregate of the sums bid on said lands, and paid to the sheriff, in money, a sum equal to the costs and expenses of sale; that parts of the lands thus sold had been bought by one G. J. Kemp, whose bid aggregated $13,600, another part had been sold to one B. F. Newman for the sum of $10,450, and the remainder had been sold to the defendant Schwerin, who bid them in for the sum of $14,960; that none of the purchasers had paid to either the sheriff or said Schwerin any part of their said bids,—the said Schwerin, as attorney in fact, waiving such payment, and crediting the decree as if the money had been paid; that under instructions from said Schwerin, the sheriff had executed deeds to the several purchasers, reciting the facts as to amount of bid and manner of payment; that, subsequently, both Kemp and Newman had conveyed the parcels so bid in by them to the defendant, who, the bill charges, "now claims to be the owner of all of said lands, in fee simple, free from all equitable claims or liens in behalf of any person." It further alleges that Schwerin has never accounted for the proceeds of said sale, "and utterly refuses to recognize the right of Samuel Newman to any money paid thereon, or any claim to or lien upon the said lands."

The complainant, Mrs. Lena Newman, is a citizen and resident of the state of Mississippi, of which state said Samuel Newman was a citizen and resident at the time of his death, in 1889, being a date subsequent to all the transactions above stated. Samuel Newman died intestate, and without issue, and without ever having had any settlement of the matters aforesaid with his said agent. Complainant is the widow of said Newman. Under the law of descent and distribution of the state of Mississippi, the widow of a husband dying intestate, and without children or representatives of children, is entitled to take his entire estate, real and personal, after payment of his debts. Code Miss. § 1545. The theory of complainant's bill is that she, as sole distributee, under the law of Mississippi, is entitled to maintain this bill, and recover and appropriate to her own use any sum due to her deceased husband by the defendant, Schwerin, by reason of the acts of the said Schwerin under his said trust and agency.

The prayer of the bill was that Morris Schwerin be made a party defendant by publication, he being a nonresident of the state of Tennessee, and a citizen and resident of the state of New Jersey; that she have decree against him for the sum of $38,740, and interest thereon, that being the aggregate sum for which the lands levied on had been sold, and the sum credited on said judgment as the result of said sales, less such sums of money as said Schwerin had properly expended in and about the execution of his power of attorney; and that an equitable lien be declared to exist in favor of complainant in the lands so acquired by said Schwerin. Publication was accordingly made. The defendant appeared, and filed a demurrer, which was as follows:

"Lena Newman vs. Morris Schwerin.

"In the chancery court, at Crossville, Tennessee, the defendant, Morris Schwerin, comes and demurs to the bill filed against him in the above-styled cause, and assigns the following grounds of demurrer: (1) This court has no jurisdiction of the cause, the defendant being a nonresident of the state of Tennessee, and there being no attachment of property against him. (2) The suit is brought to recover a debt alleged to be due Samuel Newman from the defendant, Morris Schwerin, and should have been brought by said Newman's administrator or personal representative. His widow or heir has no right of action. (3) The bill alleges that the defendant holds the lands described in the bill in trust for Samuel Newman; and, if that be true, then the right of action would descend to said Newman's heirs at law, and complainant could only maintain her suit if her husband had died, leaving no heirs at law capable of inheriting, which the bill does not charge. Wherefore, the defendant prays the judgment of the court whether he shall make any other or further defense to complainant's bill."

Before the demurrer was finally disposed of, the complainant, under leave, amended her bill by a prayer for an attachment, and upon her application she was appointed administratrix ad litem of the said Samuel Newman. From thence she seems to have been regarded as complainant in her character as administratrix ad litem, as well as in her character as distributee, though no formal order was made so amending her bill. Presumably as a consequence of this appointment, the demurrer of defendant was then overruled. After this action of the court an order was made that upon the return of

an attachment levied on the property of defendant, Schwerin, publication should be again made for him, requiring his appearance to the next September rules. In view of the general appearance already made by the defense on the merits presented by the second and third grounds of demurrer, this second publication seems to have been a work of supererogation. An attachment did issue, and was levied on certain real estate as the property of said Schwerin, and publication was made in accordance with this order. At the time named in this second publication the defendant filed his petition for a removal of the cause to the United States circuit court, which, upon consideration was allowed. After the removal the defendant filed his answer. The cause was finally heard on the pleadings and proof, and the bill dismissed, with costs.

The ground upon which this decree was based does not appear in the decree, and no opinion was filed. The contention of counsel for appellee is that the suit cannot be maintained, for want of proper parties, and that the second and third grounds of demurrer should have been sustained. We are clearly of opinion that the complainant cannot sustain this bill as sole distributee. The claim she asserts is an asset belonging to the estate of Samuel Newman. A distributee, as such, cannot maintain a suit against one indebted to an intestate. This is the well-settled general rule in Tennessee. The supreme court of that state, in the case of Thurman v. Shelton, 10 Yerg. 382, upon this question, said:

"Can distributees recover their distributive portions without an administrator of the estate of their intestate? We are clearly of opinion that they cannot. Personal property was, by the common law, considered of so little value that no provision was made for its descent to the heirs at law of the owner. Indeed, up to 22 and 23 Charles II.,—the date of the passage of the statute of distributions,—an administrator was entitled exclusively to enjoy the residue of the intestate's effects, after the payment of the debts and funeral expenses. 2 Williams, Ex'rs, 906. This being the case, whoever can get possession of personal property upon the owner's dying intestate can hold it against any person, save a creditor or administrator. To the first, he is liable as an executor de son tort; to the second, because he is the representative of the deceased, upon whom the law casts his rights to the personal estate, to be held by him for the payment of debts, and, since the passage of the statutes of distributions, for distribution among the next of kin of the intestate. A distributee stands in neither of these relations, and therefore cannot sue for the personal property of the intestate, nor demand a distribution of it from any person save the administrator."

To the same effect is the case of Brown v. Bibb, 2 Cold. 439.

In the case of Brandon v. Mason, 1 Lea, 616, and Christian v. Clark, 10 Lea, 630, it is said that the principal reason why a distributee cannot maintain suit to recover assets belonging to an intestate's estate is the interest of creditors, and their prior right to protection, and that in equity a distributee might, under special circumstances, maintain suit as such, where it was clearly shown there were no creditors. The doctrine of those cases is relied upon by complainant. The cases are not applicable. In the first place, the bill does not show that there is no administrator, and, in the second place, there is no allegation that there are no creditors. Neither are there any special circumstances which justify any court

of equity in making an exception to the general rule of the common law. Clearly, if the defendant is to be held liable to his principal for the collection of $38,740 under his power of attorney, the personal representative of that principal should be before the court. But it is said that the appointment of complainant as administratrix ad litem by the decree of the state chancery court obviates all difficulty. That decree was an interlocutory decree made in this cause,· and is just as much subject to review on this appeal as is the final decree. That decree is as follows:

"May 6, 1891.

"Lena Newman, Complainant, vs. Morris Schwerin, Defendant.

"In this cause, it appearing that there is no administrator of the estate or executor of the will of Samuel Newman, deceased, named in the bill herein, the above-named complainant, Lena Newman, is hereby appointed administratrix ad litem of such estate for the above-entitled cause, and that no bond be required of her as such administratrix, but said administratrix shall receive or take into her possession no funds or moneys arising from this proceeding until the further order of the court."

The recital in this decree that, "it appearing that there is no administrator," is unsupported by any fact in the transcript. No such allegation is made in the bill, and no such fact appears by affidavit or otherwise. .

Under the law of Tennessee the general subject of administrations is committed to the county courts, which, as probate courts, are courts of general jurisdiction, with all the powers formerly exercised by the ordinary under the English law. Under the general grant of authority, it has been held that the county courts of that state had the power to appoint an administrator ad litem, or for any other special and limited purpose authorized by the practice of the English probate courts. McNairy v. Bell, 6 Yerg. 302; Jordan v. Polk, 1 Sneed, 428. By act passed in 1889, special power was conferred upon the chancery courts of the state to appoint an administrator ad litem "in any proceeding" in a chancery court "where the estate of a deceased person must be represented, and there is no executor or administrator of such estate, or the executor or administrator thereof is interested adversely thereto. * * * Such appointment to be made whenever the facts rendering it necessary shall appear in the record of such case, or shall be made known to the court by the affidavit of any person interested therein." The bill in this case did constitute "a proceeding" in the chancery court, "where the estate of a deceased person must be represented," within the meaning of the act. Denning v. Todd, 91 Tenn. 422, 19 S. W. 228; Pritch. Wills, § 569. The entire absence from the transcript of any allegation or evidence that there was no administrator, or that he was interested adversely, is fatal to the interlocutory decree appointing complainant administratrix ad litem. It may be that, upon a collateral attack, it would be presumed that the court had made the appointment upon sufficient and proper evidence. But upon a direct appeal the transcript should show a state of facts making it proper that such an appointment should be made. The appointment of a general administrator operates to vest in him the

entire title to all the personalty of the deceased within the limits of the jurisdiction. Under the ecclesiastical law, no power existed in the ordinary, after such an appointment, and while the administrator was capable of acting, to withdraw any part of the power or title conferred, and vest a part in another person. This was expressly determined, in a most lucid opinion by Chief Justice Marshall, in the case of Griffith v. Frazier, 8 Cranch, 9. Under the Tennessee statute the power to make such a limited appointment was conferred only upon the express condition that there was no administrator, or that the administrator was incapacitated from acting by reason of an adverse interest. Unless the record in a direct appeal show that one or the other of these conditions existed, the appointment of an administratrix ad litem for the purpose of conducting the particular suit must be held irregular and ineffectual.

There is another objection to proceeding in the present state of this record. The fifth paragraph of the power of attorney under which defendant was acting contains a provision whereby the maker of the instrument, after all legitimate expenses have been paid, binds himself to divide the proceeds of all lands recovered or moneys realized "into four equal parts, three of which shall be distributed among the heirs of my [his] deceased brother, Charles Newman, and one shall I retain myself." The record shows that the persons described as heirs of his brother, Charles, are the same persons who, under the law of descent of Tennessee, are the heirs at law of Samuel Newman. Whether the lands sought to be subjected under complainant's bill be regarded as personalty or realty, for purposes of descent and distribution, the persons in whose favor a trust is declared by the fifth clause of the power of attorney, and the persons answering to the description of heirs of Charles Newman under the Tennessee statute of descent, should be parties.

It was suggested at the bar that the petition for removal was filed too late; that, after the interposition of a defense in the state court by demurrer, it was too late, under the act of 1887, to apply for removal to the federal court. The suit was one between citizens of different states, and therefore within the general jurisdiction of the circuit court. The objection that the right of removal from the state court was not asserted within the time required by the act of 1887 is an objection which may be waived. No motion to remand having been made in the circuit court, the objection cannot for the first time be made here. Railway Co. v. McBride, 141 U. S. 127, 11 Sup. Ct. 982; Railway Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905. This very question arose in the case of Gerling v. Railroad Co. (decided Feb. 5, 1894), the opinion being by Mr. Justice Gray, who said:

"The time of filing a petition for removal of a case from a state court into the circuit court of the United States for trial is not a fact in its nature, essential to the jurisdiction of the national court, under the constitution of the United States, like the fundamental condition of a controversy between citizens of different states. But the direction as to the time of filing the petition is more analogous to the direction that a civil suit within the original jurisdiction of the circuit court of the United States shall be brought in a certain district, a noncompliance with which is waived by a defendant who does not seasonably object that the suit is brought in the wrong district.

Gracie v. Palmer, 8 Wheat. 699; Taylor v. Longworth, 14 Pet. 172, 174; Trust Co. v. McGeorge, 151 U. S. 129, 14 Sup. Ct. 286. That the jurisdiction of the circuit court of the United States over a case removed into it from a state court cannot be defeated upon the ground that the petition for removal was filed too late, if the objection is not taken until after the cause has proceeded to trial in the circuit court of the United States, has been distinctly decided by this court." 14 Sup. Ct. 539; French v. Hay, 22 Wall. 238.

The decree of the circuit court should be so modified as to dismiss the bill, because Mrs. Newman, as distributee, has no such right or title as enables her to maintain this suit, whether the recovery sought be a money decree, or a recovery of the land, or an interest therein, as realty. The administrator of Samuel Newman, as well as the heirs of both Samuel and Charles Newman, are proper and necessary parties to any suit involving the matters presented by the present bill. The costs of this court will be divided between the appellant and appellee.