POWERS v. CHESAPEAKE & O. RY. CO.

(Circuit Court, D. Kentucky. January 7, 1895.)

1. REMOVAL OF CAUSES—ESTOPPEL TO ALLEGE EXPIRATION OF TIME—FRAUDULENT JOINDER AND DISMISSAL OF DEFENDANTS.

Though a nonresident defendant is not entitled to removal of a cause to a federal court because plaintiff joins resident defendants merely to prevent removal by the nonresident, where the complaint states a good joint cause of action for tort, yet on plaintiff's dismissing—before trial, but after expiration of the statutory time for removal—the resident defendants, the nonresident defendant is entitled to removal, and plaintiff is estopped to allege the expiration of the time therefor.

2. SAME—JOINDER OF DEFENDANTS TO PREVENT REMOVAL—INFERENCE.

Where plaintiff, after removal to a federal court of an action against a nonresident railroad for tort, dismisses it, and brings action in a state court for the same tort against the same defendant, joining with it, as defendants, resident employés of the road, and, after expiration of the time for removal, voluntarily dismisses it as to the employés, their joinder will be *held* to have been merely to prevent removal.

3. SAME—PETITION—JURISDICTION OF STATE COURT.

A state court cannot pass on issues of fact involved on petition for removal, but can deny an application only when, as matter of law, on the face of the petition, and the facts disclosed by the record, the right does not exist.

4. SAME—AMENDMENT OF PETITION.

A petition for removal, notwithstanding expiration of the statutory time therefor, because of fraud estopping plaintiff, which correctly states the ultimate jurisdictional facts, may be amended in the federal court to more perfectly state the facts concerning the fraud, they all appearing in the record.

Action by John T. Powers against the Chesapeake & Ohio Railway Company. Heard on motion to remand to state court.

This is a motion to remand a cause removed from the circuit court of Kenton county, Ky. On April 14, 1893, the plaintiff, Powers, a citizen of Kentucky, filed his petition in the Kenton circuit court against the Chesapeake & Ohio Railway Company and David T. Evans, alleging that the defendant railway company was a citizen of Virginia, and that Evans was a resident of Kenton county, Ky., and that both defendants were jointly guilty of negligence in the operation of a train on the Chesapeake & Ohio Railroad, which resulted in severe injuries to the plaintiff, for which he asked damages against both in the sum of $25,000. On April 29th, before an answer or plea was required to be filed under the laws and practice of Kentucky, each defendant filed a petition to remove the cause to this court on the ground that both defendants were citizens of Virginia, while the plaintiff was a citizen of Kentucky. The plaintiff, by answer to the petition for removal, raised an issue of fact as to the citizenship of Evans, alleging that he was a citizen of Kentucky, and moved to remand the case. This court found that Evans was a citizen of Virginia, and denied the motion. The plaintiff, thereupon, on May 17, 1893, dismissed his action in this court, and filed a new petition on the same cause of action in the Kenton circuit court, in which he made defendants, not only the Chesapeake & Ohio Railway Company and Evans, but also William D. Boyer and Edward Hickey. The petition alleged that the plaintiff was a switchman in the employ of the Chesapeake & Ohio Railway Company; that, while engaged in throwing a switch at night, he was run down by an engine of the company, and severely injured; that the engine was running backwards, drawing a caboose; and that the accident occurred and the injuries were inflicted because of the joint, gross, and wanton negligence of the railway company and Boyer, the conductor, Evans, the engineer, and Hickey, the fireman, the last three of whom had possession, direction, and control of the engine and caboose, as

agents of the company. Damages were asked in the sum of $25,000. Before it was required by the law of Kentucky to answer or plead, the Chesapeake & Ohio Railway Company filed a petition for removal to this court, which, after generally describing the suit and the amount involved, proceeded as follows: "That there is in said suit a controversy which is wholly between citizens of different states, and which can be fully determined as between them, to wit, between your petitioner, the Chesapeake & Ohio Railway Company, defendant in said suit, who avers that it was at the commencement of this suit, and still is, a corporation organized under the laws of the states of Virginia and West Virginia, and of no other state, and that it was then, and still is, a citizen and resident of the states of Virginia and West Virginia, and of no other state; that it was not then, and is not now, a resident or citizen of the state of Kentucky,—and the plaintiff, John T. Powers, who was at the commencement of this suit, and still is, a resident and citizen of the state of Kentucky. Your petitioner further says that the said defendants Wm. D. Boyer, David Evans, and Edward Hickey are fraudulently and improperly joined as parties defendants for the sole purpose of defeating the right of petitioner to remove to the United States circuit court." Bond was given, and the cause was removed. Plaintiff answered the petition for removal in this court, denied that the controversy was wholly between citizens of different states, and denied that the three defendants, Boyer, Evans, and Hickey, had been fraudulently or improperly joined to defeat their codefendant's "pretended right of removal." It being admitted that Boyer and Hickey were citizens of Kentucky, this court granted the motion to remand, holding that as plaintiff's petition stated a good cause of action against Boyer, Evans, and Hickey, the plaintiff had the right to unite them as defendants with the railway company, even if it was done with the intention of defeating the jurisdiction of the federal court; that when a tort was committed by several, the injured person had an election to sue one or all, and the motives for the election could not be made a ground for treating as a separable cause of action against a single defendant that which the plaintiff had chosen to treat as a joint one; that in a federal court the petition, as against the Chesapeake & Ohio Railway Company, was probably demurrable, but it was not so against the other defendants, and because a removing defendant had a good defense, in law or fact, to a joint action, it did not thereby become, with respect to such defendant, a separable controversy. The cause proceeded to issue in the state court, and on October 16, 1894, the plaintiff discontinued his cause as to all the defendants except the Chesapeake & Ohio Railway Company. The defendant at once filed a petition for removal to this court, and tendered a bond. The plaintiff objected, and the court denied the petition, and declined to approve the bond, "but not for lack of sufficiency thereof." The cause then proceeded in the state court to trial, verdict, and judgment for plaintiff in the sum of $10,000. The defendant filed the transcript of the proceedings in this court before the first day of this term,—the next after the denial of the second petition for removal by the state court. That petition was like the first, except in the following clauses: "Your petitioner further says that in the bringing of this suit heretofore, on the —— day of ——, 189-, David Evans and Edward Hickey were fraudulently and improperly joined as parties defendant in the above-entitled cause for the sole purpose of defeating the right of your petitioner to remove this cause to the United States circuit court; that, because of the joinder of the said Evans and Hickey, said cause was remanded to the state court. Your petitioner says that the suit, as to said Evans and Hickey, was on the 16th day of October, 1894, dismissed; that the said cause is now for the first time pending as to the said Chesapeake & Ohio Railway Company alone." Plaintiff filed an answer to the petition in this court, and also a motion to remand. The answer denies that the defendants other than the Chesapeake & Ohio Railway were fraudulently or improperly joined to defeat the latter's alleged right of removal. In support of the petition for removal; the defendant has filed the affidavits of Evans and Boyer, stating that the discontinuance, as to them, was made by plaintiff without consideration moving from them, and without their request or knowledge. The record shows that Hickey was never served with summons.

Wm. Goebel, for plaintiff.

Wm. H. Jackson, for defendant.

Before TAFT, Circuit Judge, and BARR, District Judge.

TAFT, Circuit Judge (after stating the facts). A plaintiff has a joint and several cause of action against a citizen of another state and citizens of his own state. He joins them in a single action in the state court for the sole purpose of preventing removal by the non-resident to the federal court. After the statutory time for removal has passed, and the joinder of the resident defendants has, as he thinks, effected his purpose, the plaintiff discontinues the case as to all but the nonresident defendant. Does this conduct estop the plaintiff from making the objection that the petition for removal filed immediately after the discontinuance is too late? This is the question which the defendant seeks to raise, and we must first determine whether it is squarely presented for our decision.

The circumstances shown by this record leave no doubt that the purpose of the plaintiff in the joining of Evans, Boyer, and Hickey as defendants was to defeat the railway company's right to remove the case. In the first suit, Evans, the fireman, was made codefendant with the company. When it was found that his citizenship was not such as to defeat removal, the suit was dismissed, and a new one brought, with the engineer and conductor as additional defendants. They were shown to be citizens of Kentucky, and thereby the removal of the new case was defeated. Just before the trial, without request or knowledge on their part, the defendants, except the company, were dismissed. Counsel seek to explain the dismissal on the grounds that Hickey, one of the defendants, had not been served with summons, and that the presence of the others as parties defendant was made the basis of an unfounded claim that the trial in the state court should be transferred from Independence to Covington. The record does not show that either of the defendants Evans or Boyer moved to transfer, or that their presence in the cases made the transfer necessary. Even if it did so appear, the explanation is not sufficient. It is a virtual confession that they were not joined in good faith to obtain judgment against them. Courts are not required to be blind to plain facts. The joinder of a fireman or an engineer or a conductor as defendants in an action to recover $25,000 against a railroad company, without explanation, of itself raises a suspicion that it is not done merely to recover judgment against the employés; and when a cause is dismissed in the federal court in order to make such employés parties defendants to a new suit, and after fear of removal is passed they are then dismissed, the inference as to the purpose of their joinder is too plain to need much discussion. In Arrowsmith v. Railroad Co., 57 Fed. 165, Judge Lurton made a similar inference from an analogous, though not the same, state of facts.

But it is said that the petition for removal is defective, in that it does not aver that Boyer was fraudulently joined as a defendant, and subsequently dismissed. The petition for removal stated the necessary jurisdictional facts, namely, the diverse citizenship and the

jurisdictional amount, and averred that removal within statutory time had been prevented by fraud of plaintiff. It is true that, in mentioning the names of the defendants who were alleged to have been joined fraudulently in order to defeat the jurisdiction of the federal court, and to have been dismissed after serving this purpose, Boyer, was, by an evident mistake, omitted; but this was merely an omission to state all the evidential facts on which the claim of fraudulent estoppel was based, but it did not destroy the legal sufficiency of the petition to show an estoppel. It is settled beyond controversy that it is not for the state court to pass upon the facts involved in the averments of a petition for removal. It can only deny an application to remove when, as matter of law, on the face of the petition, and the facts disclosed by the record, the right does not exist. Railroad Co. v. Daughtry, 138 U. S. 298, 11 Sup. Ct. 306; Crehore v. Railway Co., 131 U. S. 240, 9 Sup. Ct. 692; Railway Co. v. Dunn, 122 U. S. 513, 7 Sup. Ct. 1262; Carson v. Hyatt, 118 U. S. 279, 6 Sup. Ct. 1050. An examination of the record in this case would have shown the joinder of Evans, Hickey, and Boyer; the averment in the first petition for removal that they had all been fraudulently joined to defeat removal; and their subsequent dismissal from the case. This is a case, therefore, where an amendment to the petition for removal can be permitted in this court, to state more fully and exactly all the facts upon which the removal was prayed, because the ultimate jurisdictional facts are correctly stated, and the detailed facts concerning the fraud, though imperfectly stated in the petition for removal, all appear in the record. Carson v. Dunham, 121 U. S. 421, 427, 7 Sup. Ct. 1030; Ayers v. Watson, 113 U. S. 594–598, 5 Sup. Ct. 641; Crehore v. Railway Co., 131 U. S. 240, 9 Sup. Ct. 692; Jackson v. Allen, 132 U. S. 27, 10 Sup. Ct. 9; Martin's Adm'r v. Railroad Co., 151 U. S. 673–691, 14 Sup. Ct. 533. It is true, also, that there is in the petition no direct statement that the reason why the joinder of Hickey and Boyer defeated the jurisdiction of the federal court was because they were citizens of the same state as the plaintiff, though this is a necessary inference from the averments made. But it does appear from the ruling of this court on the first petition for removal, which was made part of the record in the state court, that it was then admitted by both plaintiff and defendant that Boyer and Hickey were citizens of Kentucky, and that for this reason the motion to remand was granted. Defendant has been given leave to amend its petition for removal to restate the facts as above suggested, and an amended petition has been filed.

On the whole, therefore, we conclude that the question is fairly before us whether the joinder by a plaintiff, in a state court, of resident defendants, against whom a good cause of action is stated, solely to prevent removal by a nonresident defendant, and the subsequent dismissal of such resident defendants from the case, leaving the suit against the nonresident alone, estop plaintiff to plead the time limitation against removal. The question is a new one, but we think its answer is not difficult, in view of the ruling of the supreme court of the United States in analogous cases. It has long been held that the joinder of a sham defendant to defeat the jurisdiction of the federal court

could not prevent removal; but those cases were where, on the face of the declaration of the plaintiff, no cause of action was stated against the defendants whose joinder was charged to be fraudulent. Such were the cases of Arapahoe Co. v. Kansas Pac. Ry. Co., 4 Dill. 277, Fed. Cas. No. 502, and Arrowsmith v. Railroad Co., 57 Fed. 165. Here, in plaintiff's petition, a good cause of action was stated against the defendants alleged to have been fraudulently joined; and, if the cause had proceeded to judgment against or in favor of these defendants, no removal could have been had at any stage of the case. This court has already decided in this case that the motive a plaintiff has in suing defendants against whom he can state a good cause of action cannot affect the question of removing the case to the federal court, so long as they remain parties to the cause. We see no reason now to question that conclusion. But the motive of plaintiff in joining such defendants does become material if he subsequently dismisses them, and makes the case, before final trial, one which would have been removable, had it been thus originally brought. If the court can gather from the circumstances that the joinder and subsequent dismissal of the other defendants were a mere device to defeat a removal by the nonresident defendant within the statutory time, and with no purpose of ever pushing the case to judgment against the others, we are very clear that the plaintiff ought not to be allowed to take advantage of a delay in removal which his own fraud brought about, and that he must be estopped to use that delay as an objection. It has been several times decided by the supreme court that the time for removing the case, fixed by the statute, is not indispensable to the jurisdiction of the federal court, but that it may be waived by the consent and acquiescence of the parties, and that a party may be estopped by his conduct to allege it as an objection to removal. In Ayers v. Watson, 113 U. S. 594, 598, 5 Sup. Ct. 641, a defendant filed his petition for removal to the federal court after the time had elapsed within which the statute required it to be filed. The cause was removed, and resulted in a judgment against the defendant, who, on appeal, sought to reverse the judgment on the ground that the circuit court was without jurisdiction, because the petition for removal was not filed in time. The supreme court held that, as the party objecting had himself removed the case, he was estopped to make such an objection. This was under the removal act of 1875, but, though the time for removal is changed, this question is not different under the acts of 1887 and 1888. We quote in full the language of Mr. Justice Bradley upon the point:

"By section 2 of the act of 1875, any suit of a civil nature, at law or in equity, brought in a state court, where the matter in dispute exceeds the value of $500, and arising under the constitution or laws of the United States, or in which the United States is plaintiff, or in which there is a controversy between citizens of different states, or a controversy between citizens of the same state claiming lands under grants of different states, or a controversy between citizens of a state and foreign state, citizens or subjects, either party may remove said suit into the circuit court of the United States for the proper district, and when, in any such suit, there is a controversy wholly between citizens of different states, which can be fully determined as between them, one or more of the plaintiffs or defendants

actually interested in such controversy may remove said suit to the circuit court of the United States for the proper district. This is the fundamental section based on the constitutional grant of judicial power. The succeeding sections relate to the forms of proceeding to effect the desired removal. By section 3 it is provided that a petition must be filed in the state court before or at the term at which the cause can be first tried, and before the trial thereof, for the removal of the suit into the circuit court, and with such petition a bond, with condition, as prescribed in the act. The second section defines the cases in which a removal may be made. The third prescribes the mode of obtaining it, and the time within which it should be applied for. In the nature of things, the second section is jurisdictional, and the third is but modal and formal. The conditions of the second section are indispensable, and must be shown by the record. The directions of the third, though obligatory, may, to a certain extent, be waived. Diverse state citizenship of the parties, or some other jurisdictional fact prescribed by the second section, is absolutely essential, and cannot be waived; and the want of it will be error at any stage of the cause, even though assigned by the party at whose instance it was committed. Railway Co. v. Swan, 111 U. S. 379, 4 Sup. Ct. 510. Application in due time, and the proffer of a proper bond, as required in the third section, are also essential, if insisted on, but, according to the ordinary principles which govern such cases, may be waived, either expressly or by implication. We see no reason, for example, why the other party may not waive the required bond, or any information in it, or informalities in the petition, provided it states the jurisdictional facts; and, if these are not properly stated, there is no good reason why an amendment should not be allowed, so that they may be properly stated. So, as it seems to us, there is no good reason why the other party may not also waive the objection as to the time within which the application for removal is made. It does not belong to the essence of the thing. It is not, in its nature, a jurisdictional matter, but a mere rule of limitation. In some of the older cases the word 'jurisdictional' is often used somewhat loosely, and no doubt cases may be found in which this matter of time is spoken of as affecting the jurisdiction of the court. We do not so regard it. And, since the removal was effected at the instance of the party who now makes the objection, we think that he is estopped. In Railroad Co. v. Koontz, 104 U. S. 5, 17, we held that where the state court disregarded a petition for removal, properly made, and the plaintiff continued to prosecute the suit therein, he would be deemed to have waived any objection to the delay of the defendant in entering the cause in the circuit court of the United States until the decision of the state court is reversed."

Ayers v. Watson has lately been reviewed by Mr. Justice Gray, speaking for the supreme court, in Martin's Adm'r v. Railroad Co., 151 U. S. 673, 14 Sup. Ct. 533. In that case it was held that an objection that a petition for removal was not filed in time, under the acts of 1887 and 1888, was waived, if not taken before the trial in the circuit court. Ayers v. Watson, supra, and French v. Hay, 22 Wall. 238, are cited in support of this conclusion. After quoting at some length from Mr. Justice Bradley's opinion in the former case, Mr. Justice Gray says:

"His whole course of reasoning leads up to the conclusion that the time of removal, not being a jurisdictional and essential fact, is a subject of waiver and estoppel, alike." "The decision in Ayers v. Watson, as to the waiver in the circuit court of the United States of the objection that the petition for removal had not been seasonably filed in the state court, has never been doubted or qualified." Pages 690, 691, 151 U. S., and page 533, 14 Sup. Ct.

The circuit court of appeals of this circuit has applied the same principle in Newman v. Schwerin, 10 C. C. A. 129, 61 Fed. 865; and the circuit court of appeals in the Fifth circuit, in the case of Knight v. Railway Co., 9 C. C. A. 376, 61 Fed. 87. See, also, Tod

v. Railway Co. (decided by the circuit court of appeals for this circuit December 4, 1894), 65 Fed. 145.

The nearest approach to an authority for the case at bar is to be found in language of the present chief justice in the case of Railroad Co. v. Austin, 135 U. S. 315, 318, 10 Sup. Ct. 758. In that case a plaintiff brought suit for $475, making a controversy involving less than $500, which was then the minimum limit of the jurisdiction of the United States circuit courts, and thus prevented removal. After the jury was impaneled in the state court, and the trial begun, the trial court, against defendant's objection and exception, permitted an amendment increasing the amount claimed in the ad damnum clause to $1,000. Verdict and judgment of $750 were rendered, and on a writ of error the case was brought to the supreme court of the United States. The error alleged was in permitting the amendment. The court held that the only way by which the defendant could protect himself against the action of the court in allowing the amendment was by at once filing a petition for removal, and that, not having done so, no right secured by a statute or the constitution of the United States had been claimed by him or denied him, and the action of the court in permitting the amendment was not, therefore, reviewable by the supreme court of the United States. After reaching this conclusion, the chief justice continued:

"If the application had been made, the question would then have arisen whether it came too late, under the circumstances. The defendant was not entitled to remove the suit, as originally brought, 'before or at the term at which such cause could be first tried, and before the trial thereof.' But the objection to removal, depending upon the absence of the jurisdictional amount, was obviated by the amendment. As the time within which a removal must be applied for is not jurisdictional, but modal and formal (Ayers v. Watson, 113 U. S. 594, 598, 5 Sup. Ct. 641), it may, though obligatory to a certain extent, be waived. And as, where a removal is effected, the party who obtains it is estopped upon the question of the time, so, if the conduct of the plaintiff in a given case were merely a device to prevent a removal, it might be that the objection as to the time could not be raised by him. If, on the other hand, the motives of the plaintiff could not be inquired into, or, if admitted, would not affect the result, as in most cases of remittitur (Thompson v. Butler, 95 U. S. 694; Cable Co. v. O'Connor, 128 U. S. 394, 9 Sup. Ct. 112), the defendant would simply suffer for want of comprehensiveness in the statute. The amendment here was held to have been properly allowed, and we have no power or disposition to interfere with the action of the court in regard to it. The only importance it has is in its bearing upon the charge of bad faith in respect to the right of removal, and that question cannot properly arise, in the absence of an application to remove."

Now, it may be admitted that this language was not necessary to the decision of the case, and that it is not in the form of a positive statement of law, but is rather only an intimation of a possible or probable conclusion which the court would reach, were a case of the kind suggested, presented for its decision. Nevertheless, the conclusion intimated is such a necessary sequence from the reasoning of the court in Ayers v. Watson, supra, in Martin's Adm'r v. Railroad Co., supra, and in French v. Hay, supra, that we have no difficulty in applying it in the case at bar. It is sought to distinguish Austin's Case from the one at bar on the

ground that the amendment in that case changed the cause of action, while here the cause of action remained the same, and was not changed by the dismissal of the resident defendants. The distinction is untenable. The cause of action in Austin's Case was the same after the amendment as before. The maximum limit of recovery was increased by the amendment. That was all. In the case at bar, that which had been declared on as a joint tort was changed by the plaintiff, voluntarily, into a several liability. In each case, though the cause of action remained the same, the plaintiff so changed its form as to bring it within the jurisdiction of the federal court, so far, at least, as the indispensable elements of that jurisdiction were concerned. In each, the first form of action was evidently adopted as a device to prevent removal seasonably under the statute, with intent to restore the cause of action to a removable form when the statutory time had elapsed. The cases are quite parallel, and the estoppel is as plain in the one as in the other. In the Austin Case, it was not the reduction of the amount claimed below $500, with intent to defeat removal, which made the case removable; but it was the reduction with such a purpose, accompanied by a subsequent change of the form of the action, so as to bring it within the removal jurisdiction of the federal court. Had the plaintiff never amended, the case would not have been removable, however plain the intent of the plaintiff to defeat removal by limiting his own recovery. He would have the right to defeat removal in this way by giving up part of his claim. So, in the case at bar, had the plaintiff retained the resident defendants as parties until judgment, however clear it was that his intent in so doing was to defeat removal, the case could not have been removed, because, in his petition, he stated a good cause of action against the defendants so joined. But when he dismissed the resident defendants he made a removable case, and the palpable device adopted to prevent an earlier removal disables him from pleading the time limitation. Whether, if a plaintiff, in good faith, and not for the purpose of defeating the federal jurisdiction, unites defendants resident and nonresident in a single, joint cause of action, and before trial is had and judgment rendered dismisses the resident defendants from the case, leaving a controversy between the plaintiff and nonresident defendant within the removal jurisdiction of the federal court, except that the time for removal is passed, the case can be removed, against the plaintiff's objection, we need not decide. It would seem that the complainant in such a case would not be estopped to plead the time limitation, if it begins to run from the beginning of the suit, and not from the time when the case assumes the form of a removable controversy.

A case like the one at bar is not to be confused with cases like that of Arrowsmith v. Railroad Co., 57 Fed. 165, and Arapahoe Co. v. Kansas Pac. Ry. Co., 4 Dill. 277, Fed. Cas. No. 502. In those cases the plaintiff's pleading showed that the resident defendants were merely nominal or sham defendants, because no cause of action was stated against them in the one case, and no relief was asked against them in the other. In such a case, of course,

the petition for removal must be filed within the statutory time, or the right is lost. The joinder of the sham defendants does not prevent the removal, and is no excuse for any delay in perfecting it. But in the case at bar the plaintiff's petition stated a good cause of action against all the defendants. Until the resident defendants were dismissed, the case was not within the jurisdiction of a federal court, and the right of removal did not accrue. Hence, it was necessary to file a new petition for removal after the dismissal, because then, for the first time, the controversy was one of which the federal court could take cognizance. If this distinction is borne in mind, the case of Railroad Co. v. Daughtry, 138 U. S. 298, 11 Sup. Ct. 306, will be found to have nothing in it to conflict with our conclusion here. In that case, the plaintiff brought suit in a state court of Tennessee against the Kansas City, Ft. Scott & Memphis Railroad Company, a citizen of Arkansas, and the Kansas City, Memphis & Birmingham Company, a citizen of Tennessee, for the recovery of damages for the death of John W. Daughtry, alleged to have been occasioned by the negligence of the defendants. The first-named company was in default for plea to the declaration for four terms of court, and then filed its petition for removal, averring that the jurisdictional amount was in controversy; that the plaintiff was a citizen of Tennessee; that it (the petitioner) was a citizen of Arkansas; that its codefendant was a citizen of Tennessee; that the acts alleged to have been done jointly by petitioner and its codefendant were, if done at all, done by the petitioner alone, and its codefendant did not at the time, and "does not now, and never did, own, possess, control, or use the said railroad track upon which said acts were done," etc.; "that the said Kansas City, Memphis & Birmingham Railroad Company has been joined in this action as a nominal party defendant for the sole purpose of preventing your petitioner from removing this case to the circuit court of the United States." The plaintiff then filed an affidavit stating that he was a citizen of Arkansas,—the same state as that of the petitioning defendant. The state court, on the petition and affidavit, found that the plaintiff was a citizen of Arkansas, and refused to grant the petition. A few days later the cause came on for trial, and the Kansas City, Memphis & Birmingham Railroad Company was dismissed by plaintiff from the case. The resulting judgment against the other company was carried to the supreme court of Tennessee, and that court affirmed the action of the court below in denying the petition for removal, on the ground that it had power to pass on the issue of fact as to the citizenship of the plaintiff. The supreme court of the United States, to which the case was carried on error, held that in this the Tennessee court erred, because all issues of fact were for the circuit court of the United States alone to decide, but that the action of the state court must be affirmed for the reason that, as matter of law, the petition for removal was bad, because it was filed after the time for removal, as limited in the statute. In the opinion there is no reference made to the last averment in the petition for removal, that the

Birmingham Company had been joined as a nominal party solely to prevent removal; and we can merely supply the obvious reason why such an averment, under the circumstances, did not remove the objection that the petition for removal came too late. The petition for removal was filed while the Birmingham Company was still a party defendant. The averment that it was joined to defeat removal could have been made as well within the statutory time for removal as when it was made. If the Birmingham Company was merely a nominal defendant, and this appeared on the face of the declaration, the conduct of plaintiff did not prevent the seasonable filing of the petition for removal, and there was no room for an estoppel. If the declaration made a good case against the Birmingham Company, it is difficult to see how the federal court could hold it to be a nominal defendant, and remove the case without trying the merits of the case, and no authority has held that this can be done. It may truly be said, therefore, of the Daughtry Case, that either the averment as to the joinder of the resident defendant was something which could have been made the basis for a removal within statutory time, or it made no case for removal at all, as long as the resident defendant remained a party. The marked distinction between the case at bar and that of Daughtry is that in the latter case no petition for removal was filed after the dismissal of the resident defendant, and the change of the cause to a removable form. In this case, not only was a petition for removal filed within the statutory time, but a second petition was filed immediately after dismissal of the resident defendant.

We think the conclusion we have reached is a fair and just one. It is often within the power of a plaintiff to deprive a defendant of the right to go into the federal court by questionable means, which a want of comprehensiveness in the statute prevents the court from defeating. But, as Mr. Justice Miller said on the circuit in the case of Arapahoe Co. v. Kansas Pac. Ry. Co., in speaking of the constitutional right of persons with the requisite citizenship to resort to the federal courts, and the necessity of preserving it, "we must therefore be astute not to permit devices to become successful which are used for the very purpose of destroying that right." The facts of the present case seem to us clearly to show that here was a device to deprive the Chesapeake & Ohio Railway Company of its constitutional and statutory right to come into this court, and we find no difficulty in defeating the device, on principles well supported by decided cases. The petition for removal is granted, the bond is approved, and the motion to remand is denied.