## AYERS & Another *v.* WATSON.

Argued November 11, 1884.—Decided March 2, 1885.

The ruling in *Hyde* v. *Ruble*, 104 U. S. 407, that clause 2, § 639 Rev. Stat. as to removal of causes, was suspended and repealed by the act of March 3, 1875, 18 Stat. 470, reaffirmed.

§ 2 of the act of March 3, 1875, defining the cases in which causes may be removed from State courts to Circuit Courts of the United States, being fundamental and based on the grant of judicial power, its conditions are indispensable—cannot be waived—and must be shown by the record.

§ 3 of that act not being jurisdictional, but a mere rule of limitation, its requirements may be waived.

The party at whose instance a cause is removed from a State court is estopped from objecting that the removal was not made within the time required by § 3 of the act of March 3, 1875, 18 Stat. 470.

The general rule in Texas for construing descriptions in grants of land is: that natural objects control artificial objects; that artificial objects control courses and distances; that course controls distance; and that course and distance control quantity.

A grant of land in Texas was made to the grantor of the plaintiff in error, with the following description: "Beginning the survey at a pecan (nogal) fronting the mouth of the aforesaid creek, which pecan serves as a landmark for the first corner, and from which 14 varas to the north 59° west there is a hackberry 24 in. dia., and 15 varas to the south 34° west there is an elm 12 in. dia.; a line was run to the north 22° east 22,960 varas and planted a stake in the prairie for the second corner. Thence another line was run to the south 70° east, at 8,000 varas crossed a branch of the creek called Cow Creek, at 10,600 varas crossed the principal branch of said creek, and at 12,580 varas two small hackberries serve as landmarks for the third corner. Thence another line was run to the south 20° west, and at 3,520 varas crossed the said Cow Creek, and at 26,400 varas to a tree (palo) on the aforesaid margin of the river San Andres, which tree is called in English 'box elder,' from which 7 varas to the south 28° west there is a cottonwood with two trunks and 16 varas to the south 11° east there is an

elm 15 in. dia. Thence following up the river by its meanders to the beginning point, and comprising a plane area of eleven leagues of land or 275 millions of square varas." The evidence showed that the lines, when run on these courses and distances, did not coincide with ascertained monuments, either called for in the grant, or conceded to mark the track of a survey of the tract made in 1833. Two marked hackberry trees were found in 1854 in the eastern line, but not at the point called for by the description. If the courses and distances were followed, this grant covered most of the claim of defendant in error. If the two hackberry trees found in 1854 were the ones described in the grant, it would not include any of that claim. *Held:*

(1) That a request by defendant below (plaintiff in error), for an instruction "that a call for two small hackberries at the end of the distance on the course called for, having no marks on them to designate them from other trees of the same kind and having no bearing trees to designate or locate them, is not a call for such a natural object as will control the call for course and distance. And the jury are not authorized to consider any evidence in this case about two small hackberries found by S. A. Bigham, and by him pointed out to various other persons, which are found more than a mile from the point where course and distance would place the S. E. corner of the 11-league grant," was properly overruled;

(2) That the jury should have been told "that if the testimony was not sufficient to identify the two hackberries with those called for in the grant, and could not fix the northeast corner nor the back line by any other marks or monuments, then they should fix it by the courses and distances of the first and second lines of the survey, except that the second line should be extended so as to meet the recognized east line as marked and extended beyond the hackberries;" and

(3) That the instructions actually given failed to put this to the jury with sufficient distinctness.

Trespass, to try title. The facts which make this case, both on the jurisdiction of the court and on the merits, are stated in the opinion of the court.

*Mr. W. W. Boyce* for plaintiffs in error.

*Mr. L. W. Goodrich* filed a brief for defendant in error.

Mr. Justice Bradley delivered the opinion of the court.

This was an action of trespass to try title of certain land in Bell County, Texas, originally brought in the District Court of said county by Watson, the defendant in error, against the plaintiffs in error and one Anderson. The land claimed was

described in the petition as a tract lying in said county of Bell, about fifteen miles northeast by north from the three forks of Little River, stating the boundaries. The defendants excepted to the petition for insufficiency of law, and also pleaded not guilty. One of them, Frank Ayers, pleaded specially that he was owner in fee simple of a tract of eleven leagues granted by the government of Coahuila and Texas to Maximo Moreno in the year 1833, describing its metes and bounds; and he alleged that the land described in the plaintiff's petition and claimed by him under some pretended patent from the State of Texas to the heirs of one W. W. Daws, deceased, was embraced within the boundaries of said eleven-league grant, which was an elder and superior title.

Anderson pleaded separately that he was occupying the Moreno grant as tenant of Ayers; and especially that 100 acres, including improvements, where he resided (describing its situation), was held by him under said Moreno title; that he had been in possession of said land for more than twelve months before the institution of this suit, adversely and in good faith; and he claimed the value of his improvements if the court should hold the plaintiff entitled to cover.

The plaintiff's original petition was filed in August, 1877, and the amended petition and pleas were filed in April, 1879. The cause was first tried in April, 1879, and again in April, 1880, and on both occasions the juries disagreed. Ayers then presented a petition for the removal of the cause to the Circuit Court of the United States, alleging that he was a citizen of the State of Mississippi, and that the plaintiff was a citizen of Texas, and that there could be a final determination of the controversy, so far as he was concerned, without the presence of the other defendants as parties in the cause. The court granted the petition and the cause was removed, no objection to the removal being made either then or in the Circuit Court afterwards. But after the issuing of the present writ of error from this court, the plaintiffs in error, at the instance of one of whom (Frank Ayers) the cause was removed, assigned for error, amongst other things, that the Circuit Court erred in taking jurisdiction of the cause.

In view of the position of the party who raises the objection we certainly should not feel disposed to reverse the judgment on the ground of the removal of the cause, unless it was clear that the Circuit Court had no jurisdiction whatever to hear and determine it. The only reasons assigned before us for the want of jurisdiction are—first, that it did not appear that the matter in dispute exceeded, exclusive of costs, the value of $500.; secondly, that the application for removal was too late.

The first reason has no foundation in fact. The plaintiff's petition demanded the recovery of the land and $500 damages. This was certainly a demand for more than $500, unless it can be supposed that the land itself was worth nothing at all, which will hardly be presumed.

The second reason is more serious. The application for removal was beyond question too late according to the act of 1875, though not so under the act of 1866 as codified in Rev. Stat. § 639, clause 2, which allows the petition for removal to be filed "at any time before the trial or final hearing of the cause." This language has been held to apply to the last and final hearing. A mis-trial by disagreement of the jury did not take away the right of removal. See *Insurance Co.* v. *Dunn,* 19 Wall. 214; *Stevenson* v. *Williams,* 19 Wall. 572; *Vannevar* v. *Bryant,* 21 Wall. 41; *Railroad Co.* v. *McKinley,* 99 U. S. 147. But we have held that this clause of § 639 was superseded and repealed by the act of 1875. *Hyde* v. *Ruble,* 104 U. S. 407, 410; *King* v. *Cornell,* 106 U. S. 395; *Holland* v. *Chambers,* 110 U. S. 59. We are compelled, therefore, to examine the effect of the act of 1875 upon the jurisdiction of the court when the application is made at a later period of time than is allowed by that act.

By § 2 of the act of 1875, any suit of a civil nature, at law or in equity, brought in a State court, where the matter in dispute exceeds the value of $500, and arising under the Constitution or laws of the United States, or in which the United States is plaintiff, or in which there is a controversy between citizens of different States, or a controversy between citizens of the same State claiming lands under grants of different States, or a controversy between citizens of a State and

foreign State, citizens or subjects, either party may remove said suit into the Circuit Court of the United States for the proper district, and when in any such suit there is a controversy wholly between citizens of different States, which can be fully determined as between them, one or more of the plaintiffs or defendants actually interested in such controversy may remove said suit to the Circuit Court of the United States for the proper district. This is the fundamental section, based on the constitutional grant of judicial power. The succeeding sections relate to the forms of proceeding to effect the desired removal. By § 3 it is provided that a petition must be filed in the State court before or at the term at which the cause can be first tried, and before the trial thereof, for the removal of the suit into the Circuit Court, and with such petition a bond, with condition, as prescribed in the act. The second section defines the cases in which a removal may be made; the third prescribes the mode of obtaining it, and the time within which it should be applied for. In the nature of things, the second section is jurisdictional, and the third is but modal and formal. The conditions of the second section are indispensable, and must be shown by the record; the directions of the third, though obligatory, may to a certain extent be waived. Diverse State citizenship of the parties, or some other jurisdictional fact prescribed by the second section, is absolutely essential, and cannot be waived, and the want of it will be error at any stage of the cause, even though assigned by the party at whose instance it was committed. *Mansfield & Coldwater Railway Co.* v. *Swan,* 111 U. S. 379. Application in due time, and the proffer of a proper bond, as required in the third section, are also essential if insisted on, but, according to the ordinary principles which govern such cases, may be waived, either expressly or by implication. We see no reason, for example, why the other party may not waive the required bond, or any informalities in it, or informalities in the petition, provided it states the jurisdictional facts; and if these are not properly stated, there is no good reason why an amendment should not be allowed, so that they may be properly stated. So, as it seems to us, there is no good reason why the other party may not also waive the

objection as to the time within which the application for removal is made. It does not belong to the essence of the thing; it is not, in its nature, a jurisdictional matter, but a mere rule of limitation. In some of the older cases the word jurisdiction is often used somewhat loosely, and no doubt cases may be found in which this matter of time is spoken of as affecting the jurisdiction of the court. We do not so regard it. And since the removal was effected at the instance of the party who now makes the objection, we think that he is estopped. In *Railroad Co.* v. *Koontz,* 104 U. S. 5, 17, we held that where the State court disregarded a petition for removal properly made, and the plaintiff continued to prosecute the suit therein, he would be deemed to have waived any objection to the delay of the defendant in entering the cause in the Circuit Court of the United States until the decision of the State court is reversed.

We do not think that this assignment of error is well taken.

The case, on its merits, depends upon the correctness of the instructions given to the jury. By agreement of the parties, the patents or grants under which they respectively claimed, as set forth in the petition and answer, and their deraignment of title under the same, were admitted on the trial, and the controversy was reduced to the simple question of locating the surveys on the ground. The tract claimed by the plaintiff, Watson, was one-third of a league, patented to the heirs of Walter W. Daws, and its position was well ascertained and defined; and the question was, whether it was or was not embraced in the older survey of the eleven-league grant, owned by the defendant Ayers, which was described in the field notes of the grant, as follows, viz: " situated on the left margin of the river San Andres, below the point where the creek called Lampassas enters said river on its opposite margin, and having the lines, limits, boundaries, and landmarks following, to wit: Beginning the survey at a pecan (nogal) fronting the mouth of the aforesaid creek, which pecan serves as a land-mark for the first corner, and from which 14 varas to the north 59° west there is a hackberry 24 in. dia., and 15 varas to the south 34° west there is an elm 12 in. dia.; a line was run to the north

22° east 22,960 varas and planted a stake in the prairie for the second corner. Thence another line was run to the south 70° east, at 8,000 varas crossed a branch of the creek called Cow Creek, at 10,600 varas crossed the principal branch of said creek, and at 12,580 varas two small hackberries serve as landmark for the third corner. Thence another line was run to the south 20° west, and at 3,520 varas crossed the said Cow Creek, and at 26,400 varas to a tree (palo) on the aforesaid margin of the river San Andres, which tree is called in English 'box-elder,' from which 7 varas to the south 28° west there is a cottonwood with two trunks, and 16 varas to the south 11° east there is an elm 15 in. dia. Thence following up the river by its meanders to the beginning point, and comprising a plane area of eleven leagues of land or 275 millions of square varas."

This tract extended backward from the river, in a northerly direction, from twelve to fourteen miles, and, as that was about the distance from the river of the tract claimed by the plaintiff, the question was whether it embraced the latter. If it did, being held by an elder title, the defendant would be entitled to the verdict; if not, the plaintiff would be entitled to it. Under the concessions made by the parties, the burden of proof was devolved upon the defendant to show that his eleven-league tract extended so far back from the river as to embrace the plaintiff's land, or any part of it.

The evidence was that of surveyors and chain-bearers, and tended to show the following facts, namely, that, by commencing at the beginning point of the Moreno grant (the position of which was not disputed), and following the lines of the survey by courses and distances only, it would embrace nearly the whole of the Daws patent; but, run in this way, the lines would not coincide with certain well ascertained monuments, either called for in the grant, or conceded to mark and identify the footsteps of the surveyor who originally located it in 1833. For example, the easterly line of the survey, which is identified by several miles of marked trees, and the southern terminus of which, at the river San Andres, is fixed by agreement of the parties and by monuments called for in the grant

itself, is situated about 570 varas, or three-tenths of a mile, east of what its position would be if the courses and distances were followed; and, as fixed by such monuments, if the tract were made to extend as far back from the river as the defendant contends, it would contain fourteen or fifteen square leagues instead of eleven. But the point of greatest importance was to fix the position of the northern boundary line of the tract, to ascertain whether it took in or crossed the Daws patent. This was a line described in the survey as running from the stake set in the prairie, south 70° east, 12,580 varas, or Mexican yards, [about 6¾ miles,] to two small hackberry trees. Of course, these hackberries marked the northern terminus of the eastern boundary line, before mentioned, which commenced from them; and two such trees, having all the old marks and blazes requisite, were found in said eastern boundary line (and were adopted as the northeast corner of the tract), in the course of an official survey, made by the order of the court in 1854, being at a distance of 26,960 varas from the river San Andres —the distance given in the field notes of the grant, based on calculation and not actual measurement, being 26,400 varas; whereas, by following the courses and distances mentioned in the grant, the easterly line, extended to the river, would be 30,-760 varas in length, and, as before stated, would not coincide with the marked line conceded to be the easterly line as run at the original survey. If the northerly line of the Moreno tract should be located and fixed by taking for its eastern terminus the two hackberry trees referred to, it would not reach the plaintiff's land, but would pass south of it a full half of a mile. The defendant, Ayers, however, disputed the identity of these hackberry trees with those called for in the Moreno grant, and claimed that the grant extended a mile and a half or more farther north, which, indeed, it would do according to the length of the first course measured from the beginning corner; and he adduced testimony to show some marked trees north of the two hackberries, in the line of the eastern boundary, corresponding to his views, and some marks along the northerly or back line, claimed by him to be the true line.

The controversy, therefore, was substantially reduced to this

alternative, namely: if the first line of the survey taken according to its course and distance, should govern the position of the back line, the Moreno tract would include the greater part of the Daws patent; but if the two hackberry trees, discovered in 1854, were to be regarded as identical with the trees referred to in the field notes of the survey for the northeast corner thereof, then they would fix the position of the back line, and the Moreno grant would not include any part of the Daws patent.

In this state of the evidence, the judge charged the jury as follows, omitting parts not material to the controversy here:

"The original field notes do not call for any landmark at the intersection of the western line with the back or north line of the survey. At the intersection of the back line with the eastern line two small hackberries are mentioned as serving for a landmark to designate the corner. Our purpose and your duty is to follow the tracks of the surveyor, so far as we can discover them on the ground with reasonable certainty, and where he cannot be tracked on the ground, we have to follow the course and distance he gives, so far as not in conflict with the tracks we can find that he made. . . . There has been proof given you tending to show where the two small hackberries called for as the intersection of the eastern and north lines of the grant actually stood, at a distance from the lower corner on the river corresponding to the length of the eastern line of said grant. And if the proof satisfies you that the two hackberries mentioned in the testimony of the witnesses, Sam. and Pat Bigham, were the two hackberries called for and marked by the original surveyor as a corner of said grant, in that case a line drawn from the point where said hackberries stood, N. 70 W., until it intersects the western line of said grant, will bound the eleven-league grant upon the north, and if the Daws ⅓ of a league is situated wholly north of this line, it does not conflict with said eleven-league grant, and you will find for the plaintiff.

"If the proof does not satisfy you that said hackberries mentioned in the testimony are the ones called for and marked as a corner by the original surveyor, you will, from the whole

proof, so fix the unmarked or disputed lines called for in the grant as in your judgment most nearly harmonizes the calls with the known corners and the undisputed lines. And if from the proof, you fix these lines so as to include all or any part of the one-third league patented to Daws, you will find for the defendant. If you are not able to fix the disputed lines, or the disputed portions of the lines, with reasonable certainty from the proof, you may, taking the river as the base, and [*Query* so] extend the eastern and western lines as that a line run N. 70 W. (or S. 70 E.), connecting the extremities of said side lines, will embrace eleven leagues of land, and if said back line so run does not include any portion of the Daws ⅓ league, you will find for the plaintiff. If you can, from the proof, fix the lines of this grant in harmony with its calls and the known corners and undisputed line, the fact, if it be a fact, that said lines would include more than eleven leagues becomes wholly immaterial, and you will not consider the extent of the area further than as a circumstance to aid you in construing the other proof in the case. In seeking to fix these lines from the proof you will bear in mind that course controls distance, and marked trees control both course and distance."

The defendant "excepted to so much of the charge given as reads thus":

"If you are not able to fix the disputed lines, or the disputed portions of the lines, with reasonable certainty from the proof, you may, taking the river as a base, so extend the eastern and western lines as that a line run N. 70° W. ( or S. 70° E.), connecting the extremities of said side lines, will embrace eleven leagues of land, and if said back line so run does not include any part of the Daws ⅓ league, you will find for the plaintiff."

The defendant then asked the court to give the following charge, to wit:

"That a call for two small hackberries, at the end of the distance on the course called for, having no marks on them to designate them from other trees of the same kind, and having no bearing trees to designate or locate them, is not a call for such a natural object as will control the call for course and distance. And the jury are not authorized to consider any

evidence in this case about two small hackberries found by S. A. Bigham, and by him pointed out to various other persons, which are found more than a mile from the point where course and distance would place the N. E. corner of the 11-league grant."

The court refused to give said charge.

The defendant then asked the court to charge substantially as follows :

1st. That the rules adopted by the courts as to the calls in a grant, giving one call superiority over another, are adopted for the purpose of identifying the actual survey made by the surveyor—an invariable rule being that the footsteps of the surveyor must be followed, and wherever he established the lines and corners on the ground, there the survey must be located.

2d. That if the jury believe from the evidence that the Moreno survey was actually made on the ground, by commencing at the beginning corner, as called for in the grant, and actually running out and tracing with a chain the upper or western line, as called for (except the offset to avoid crossing the river) ; and that the northwest corner was fixed at a point on the course called for in the grant, at the end of the distance called for; and that from the northwest corner so established, the surveyor did actually run out and trace with the chain the distance called for, on the course called for, to the northeast corner, they must find for the defendant.

The court refused to give the charges so requested.

Leaving for after consideration the first exception, namely, that which was taken to a portion of the charge given by the court, and taking up in their order the several requests to charge, we observe, that the first request, relating to the call for two small hackberries, was properly overruled. Though the field notes of the survey did not describe them as being marked, and did not refer to other near objects as bearing upon them, yet they were natural objects actually called for at the end of the line of 12,580 varas *" as landmark for the third corner ;"* and the presumption is that, being so referred to, they were actually marked as such, for that is the universal

custom of all surveyors; and if two such trees, answering the description, were afterwards found in the east line of the survey, properly marked, and situated at about the proper distance from the river San Andres, as called for in the survey, it was for the jury to say, in the light of all the evidence, whether said trees, so marked and so situated, were or were not the trees called for in the field notes; and, if they were, then they were such objects, and such a monument, as would control the call for course and distance. It is every day's experience in land trials, to establish by evidence the identity of both natural and artificial monuments called for in surveys. If the beginning point be at the mouth of a brook, or creek, where it empties into a river, evidence may be given, nay, must generally be given, to establish the identity of the brook; and when once established to the satisfaction of the jury, it has all the effect of any natural or artificial object called for in the survey, and will control courses and distances. In the present case the two hackberry trees relied on by the plaintiff were found in the acknowledged easterly line of the survey, in which they ought to be; (2) the evidence is that they were duly marked and blazed; (3) they were at about the proper distance from the river San Andres and from Cow Creek to correspond with the field notes of the survey, and to make the survey contain the quantity of eleven leagues, although they were nearly 4,000 varas south of the northeast corner of the tract as it would be fixed by giving to the first course of the survey its full length of 22,960 varas. Under these circumstances we think that the court was right in leaving it to the jury to determine whether the two hackberries relied on by the plaintiff were or were not the same which were called for by the survey, and in holding that if they were the same, then, as monuments, they would control the distance assigned by the field notes to the first course. It has been repeatedly held by the Supreme Court of Texas, as a general rule, that natural objects called for in a grant, such as mountains, lakes, rivers, creeks, rocks, and the like, control artificial objects, such as marked lines, trees, stakes, etc., and that the latter control courses and distances. *Stafford* v. *King*, 30 Texas, 257, 270; *Booth* v. *Strip-*

*pleman,* 26 Texas 436, 441 ; *Bolton* v. *Lann,* 16 Texas, 96, 111, 112. There are exceptional cases, however, in which courses and distances may control, as where mistakes have been made by the surveyor as to objects called for, or where the calls for monuments are inconsistent with each other and cannot be reconciled, or where some other clearly sufficient reason exists for disregarding the general rule. *Booth* v. *Upshur,* 26 Texas, 71 ; *Booth* v. *Strippleman,* 26 Texas, 441.

The request to charge that all rules have for their object the identification of the actual survey made by the surveyor, and that it is an invariable rule that the footsteps of the surveyor must be followed, and that the lines and corners must be located where he established them, was unnecessary, inasmuch as the court did charge substantially to that effect. The court expressly said : " Our purpose and your duty is to follow the tracks of the surveyor, so far as we can discover them on the ground with reasonable certainty, and where he cannot be tracked on the ground, we have to follow the course and distance he gives, so far as not in conflict with the tracks we can find that he made." We do not well see how it could be more plainly stated, that the main object to be reached by the whole inquiry was to ascertain and follow the actual footsteps of the surveyor.

The final request was, in substance, a request to charge that if the jury believed from the evidence that the survey was actually made on the ground according to the first and second courses and distances, they must find for the defendant. As there appears to have been no doubt from the evidence that if the lines were so run, the second line, that is, the north or back line, would take in the greater part of the lot claimed by the plaintiff, the request would have been a proper one had it been qualified with the condition that the two hackberry trees were not satisfactorily identified as those called for in the Moreno grant. But without being so qualified the proposed instruction would have had a tendency to withdraw the minds of the jury from the controlling effect which the identification of those trees as the true northeast corner would properly have had on the conclusion to be reached by the jury, as to the question whether

the two lines referred to were, or were not, run and measured according to the field notes. For it is perfectly clear that they could not have been so run and measured, if the two hackberry trees mentioned in the field notes were the same as those relied on by the plaintiff. The request, therefore, should have been, that if the jury did not believe the hackberries were the same, then, if they believed that the two lines were run according to the field notes, they must find for the defendant.

It still remains to consider the correctness of that part of the charge given which was excepted to by the defendants. The substance and effect of it was, that if the jury were not able to fix the disputed lines, or the disputed portions of the lines, with reasonable certainty, they might locate the back, or northerly line, so as to embrace eleven leagues between it and the river, and between the east and west lines as acknowledged by the parties. This was allowing the jury to make the location of the back line depend on the quantity of the land enclosed, if they could not fix it from the evidence. In this we think there was error in the charge. The whole context immediately connected with the passage excepted to, was in substance this: that if the testimony satisfied the jury that the two hackberries discovered were identical with those called for in the grant, the back, or north, line must start from, or end with, them, running in a course north 70° west, or south 70° east; but that if the testimony did not satisfy them as to the identity of the trees, then they must fix the unmarked or disputed lines so as most nearly to harmonize the calls with the known corners and the undisputed line (that is, the east line). If the jury were not able to fix the disputed lines, or the disputed portions of lines, then they might resort to quantity, that is, locate the back line between the two recognized side lines so as to take in eleven leagues.

Now, it seems to us, that the jury should have been told that if the testimony was not sufficient to identify the two hackberries with those called for in the grant, and could not fix the northeast corner nor the back line by any other marks or monuments, then they should fix it by the courses and distances of the first and second lines of the survey, except that the

second line should be extended so as to meet the recognized
east line as marked and extended beyond the hackberries. This
would have been in accordance with the rule, that course con-
trols distance, and that course and distance control quantity,
which is correctly laid down in *Stafford* v. *King*, 30 Texas, 257,
and *Welder* v. *Hunt*, 34 Texas, 44.

The statement in the first part of the charge, that the jury
should follow the tracks of the surveyor, so far as they could
be discovered, and when these were not to be found, they should
follow the course and distance which he gives, so far as not
in conflict with tracks that are found, was correct. Had this
proposition been followed in the subsequent part of the charge,
it would not have been open to criticism. But when directions
were given to the jury in greater detail, they were not referred
to the courses and distances given by the surveyor, in case they
were unable to identify his tracks (that is, in case the proof
relating to the two hackberries was insufficient); but they were
told thus: "you will, from the whole proof, so fix the un-
marked or disputed lines called for in the grant as in your
judgment most nearly harmonizes the calls with the known
corners and the undisputed lines;" and if not able to fix these
lines in this way, then to resort to the rule of quantity. This
was putting the matter as if it depended on the judgment of
the jury whether the lines could be run according to the sur-
vey; whereas, if not compelled by fixed monuments (such as
the plaintiff claimed the hackberry trees to be) to run the
second, or back line, in a particular manner, there was nothing
in the way, so far as the evidence showed, of running the first
and second lines according to the field notes,—only extending
the second line so as to meet the east line, the position of which
was known. If the northeast corner was not determined by
the hackberries, there was nothing to interfere with the loca-
tion of the Moreno grant in exact accordance with the field
notes, except the one thing of extending the second line far
enough to meet the conceded location of the eastern boundary.

It did not depend on anything requiring the exercise of
judgment on the part of the jury; it was a matter of course.
If the position of the eastern line had not been discovered at

all, and nothing had been known but the beginning corner, the field notes would have furnished the only guide for locating the survey. The position of that line being known, it controlled the survey only in respect to that line, which required the second line to be extended sufficiently to reach it. But if the two hackberry trees, in that line, were also identified as the true northeast corner, then the position of the north line, and the length of the first course, would be controlled by those trees.

We think there was error in not putting it to the jury with sufficient distinctness, that the course and distance of the first two lines of the survey must govern, if the evidence was not sufficient to fix the location of the northern line by identifying the two hackberries with those called for in the field notes for the northeast corner of the survey, or by some other marks or monuments.

*The judgment must be reversed, with directions to grant a new trial.*

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.