THE BOATMEN'S BANK V. D. G. FRITZLEN *et al.**

No. 14,884   (89 Pac. 915.)

SYLLABUS BY THE COURT.

1. REMOVAL OF CAUSES — *Diverse Citizenship — Fraudulent Joinder of Parties.* The institution of a fictitious action in a court of the state of which the plaintiff is a citizen, for the purpose of bringing two defendants of diverse citizenship—one being a non-resident—into such court, to enable the resident defendant to litigate a cause of action against the non-resident defendant in that court, and to prevent the non-resident defendant from removing such cause to the federal court, is a fraud upon the jurisdiction of the federal court and upon the non-resident defendant, and upon a seasonable application by the non-resident defendant the sham plaintiff should be disregarded and the real controversy removed to the federal court.

2. ——— *Question to be Decided by State Court on a Petition for Removal.* The averments of fraud as well as all issues of fact raised by the petition for removal are to be tried in the federal court. The only question for a state court to decide is one of law: whether, admitting the facts alleged in the petition and disclosed by the record to be true, the cause is a removable one.

3. ——— *Time of Filing Petition.* A petition for removal is

* Pending in the supreme court of the United States on a writ of error allowed May 25, 1907.

filed in time if it is filed by the defendant as soon as the record in the cause or the acts of the parties show it to be a removable cause.

4. ——— *Fraudulent Attempt to Prevent Removal — Estoppel.* The time within which a cause may be removed, being a requirement of mode and form and not of jurisdiction, is a subject of waiver and estoppel, and a party who fraudulently attempts to prevent a removal, whereby the defendant fails to file his petition for removal within the statutory time, will not be allowed to take advantage of his own wrong, but will be estopped to object that the petition for removal was not filed in time.

5. ——— *Improper Joinder of Parties—Real Parties Citizens of Different States.* In considering a petition for removal a court should disregard an improper or sham party who has injected a fictitious cause of action into the case and may arrange the actual parties on opposite sides of the real controversy according to their respective interests, and if there then appears to be a controversy between citizens of different states, involving the requisite amount, the cause may be removed.

Error from Clark district court; EDWARD H. MADISON, judge. Opinion filed April 6, 1907. Reversed.

STATEMENT.

ON July 23, 1903, W. H. Weldon instituted a suit in the district court of Clark county, Kansas, asking for judgment for $3750 against D. G. Fritzlen and Edna P. Fritzlen upon a promissory note executed July 2, 1903, due ten days after date, and to foreclose mortgages on real and personal property of the Fritzlens. The Boatmen's Bank of St. Louis, Missouri, was named as a defendant, and it was alleged that the bank claimed some interest in the mortgaged property under mortgages held by it, but that these were illegal and of no effect. On August 13, 1903, the bank filed its petition and bond for removal to the United States circuit court for the district of Kansas, in which it alleged that it was a citizen of Missouri, and that Weldon and the Fritzlens were citizens of Kansas; and it stated as a first ground of removal that there was a

separable controversy between Weldon and the bank, and as a second ground that the bank could not obtain justice in that court because of prejudice and local influence. The controversy reached the federal court on September 14, 1903, when the motions of Weldon and the Fritzlens to remand were considered and denied. On October 9, 1903, the bank brought a replevin action in the federal court to recover the personal property of the Fritzlens covered by the bank's mortgages. On April 2, 1904, the motions to remand were renewed, and later an order was made allowing the motions and remanding the cause to the state court. (*Weldon v. Fritzlen*, 128 Fed. 608.) On April 25, 1904, the motion of the Fritzlens to dismiss the replevin action was allowed by the federal court, but that judgment was subsequently reversed by the United States circuit court of appeals. (*Boatmen's Bank v. Fritzlen*, 135 Fed. 650, 68 C. C. A. 288.)

On May 14, 1904, the bank filed an answer which, in effect, denied the allegations of Weldon's petition, but asked for no affirmative relief. On May 26, 1904, Weldon filed a reply to the bank's answer, and on the same day D. G. Fritzlen filed an answer in the case, which admitted the execution of the Weldon note and mortgages, but denied that he was indebted to the plaintiff in the amount claimed. He then set up as a first defense against the bank's note and mortgages that illegal commissions for the sale of cattle were included in the note and that they were therefore void. A second defense was that the bank was a foreign corporation and that it had not been authorized to do business in Kansas. As a third defense he set up a counter-claim for $20,000 as damages for the breach of a contract, and as a fourth defense set up a counter-claim for $25,000 for the conversion of the personal property which the bank had taken under a writ of replevin. The first and second defenses of Fritzlen's answer against the bank were identical with the defenses set

31—75 KAN.

forth in Weldon's reply to the bank's answer. On June 10, 1904, the bank filed its second petition and bond for removal, alleging, first, that there was a separable controversy, and second, that the suit was fraudulently brought by Weldon and Fritzlen to prevent a removal of the cause to the federal court and to defeat the jurisdiction of the federal court over the real controversy between the bank and the Fritzlens. On this ground the bank alleged:

·"This defendant, Boatmen's Bank, further shows· and avers that this defendant had no knowledge either by its officers or attorneys of the filing of said separate answer of defendant D. G. Fritzlen and said reply of plaintiff of May 26, 1904, until Saturday, June 4, 1904, on which last day the attorneys of said bank were furnished with copies of said answer and· reply by the clerk of the district court, and that the time within which this defendant, Boatmen's Bank, is required to plead or answer to said separate answer has not yet expired according to the statutes or the rules of practice of the state of Kansas, and that neither said Boatmen's Bank nor its attorneys herein have been served with said separate answer of defendant D. G. Fritzlen, or required by an order of court to plead, answer or demur to said separate answer, and that said separate answer is in all that is contained therein, after paragraph one, a new suit on the part of D. G. Fritzlen against this defendant, Boatmen's Bank.

"Said defendant, Boatmen's Bank, further avers and shows to the court that this suit in its inception and in the conducting thereof was and has been fraudulently instituted and maintained by plaintiff, Weldon, and defendants Fritzlen for the purpose of fraudulently preventing this defendant, Boatmen's Bank, from removing this action to the United States circuit court, as prayed for in this petition; that said Boatmen's Bank has no interest whatever in the mortgages and note held by plaintiff and made to him by defendant Fritzlen and mentioned in plaintiff's petition in this cause, and that, as appears from said separate answer of defendant D. G. Fritzlen, there was and has been and· is now no controversy between plaintiff and defendant Fritzlen as to the said mortgages and note of plaintiff and the foreclosure thereof, and said defendant Boat-

men's Bank further charges and avers that this suit was brought in the manner and form of the bringing of the same not for the purpose of adjudicating or settling any controversy between plaintiff, Weldon, and the defendants Fritzlen, but for the purpose, fraudulently, of enabling the defendants Fritzlen to maintain their said suit set up in their said separate answer herein against this defendant, Boatmen's Bank, and to litigate the same in the state court, and to prevent the trial of said controversy between said Fritzlens and this defendant, Boatmen's Bank, in the United States circuit court.

"The defendant Boatmen's Bank further avers and states that the defendants Fritzlen herein were and have been in default from the time of the institution of this suit until the filing of said separate answer herein, and that by agreement between plaintiff and defendants Fritzlen the said separate answer of D. G. Fritzlen was withheld and not filed until after the remanding of this cause on the first petition filed by this petitioner, so as to prevent it being made to appear while this action was pending on said former petition in the United States court that this suit was maintained for the fraudulent purposes aforesaid, and that the controversies herein were wholly between citizens of different states."

The petition for removal was denied, and the trial which followed in the district court resulted in favor of Weldon and the Fritzlens. The bank complains.

*Botsford, Deatherage & Young,* for plaintiff in error.

*H. J. Bone,* and *D. R. Hite,* for defendant in error D. G. Fritzlen, and *Francis C. Price,* for defendant in error W. H. Weldon.

The opinion of the court was delivered by

JOHNSTON, C. J.: Many errors are assigned on the rulings made in the various stages of the trial, but the first and controlling one is based on the decision denying the petition for removal to the federal court. There was a remand on the first petition for removal, and under the act of congress the decision on that motion is

not reviewable. (25 U. S. Stat. at L. p. 434.) In its first petition the bank, a citizen of Missouri, insisted that it had a separable controversy with the plaintiff, and alleged, as a second ground, prejudice and local influence. The first petition did not raise the issue of fraudulent joinder, but when D. G. Fritzlen answered and disclosed the conspiracy and fraudulent purpose of Weldon and Fritzlen and the theory on which they intended to proceed the second petition was filed on the ground of diversity of citizenship, and it alleged that the suit had been fraudulently instituted and maintained by Weldon, not to adjudicate any controversy with the Fritzlens, but for the fraudulent purpose of preventing the bank from removing the case to the federal court for a trial of the causes of action against the bank set forth in the answer and cross-petition of D. G. Fritzlen.

Was the bank entitled to an order of removal on the second petition, and at that time? The right of removal as given by the constitution and laws of the United States cannot be defeated by any artifice or device of parties. It is well settled that the joining of nominal parties, sham parties, or of persons fraudulently brought in to prevent removal, will not defeat the right of removal by the real party in interest if the jurisdictional facts exist as to him. In speaking of devices of this character, in *Arapahoe County v. Kansas Pacific Railway Co.*, 4 Dill. (U. S. C. C.) 277, 1 Fed. Cas. p. 502, Mr. Justice Miller said:

"It would be a very dangerous doctrine, one utterly destructive of the rights which a man has to go into the federal courts on account of his citizenship, if the plaintiff in the case, in instituting his suit, can, without any right or reason or just cause, and with the express declaration that he asks no relief from them, join persons who have not the requisite citizenship, and thereby destroy the rights of the parties in federal courts.

"We must therefore be astute not to permit devices to become successful which are used for the very purpose of destroying that right." (Page 283.)

In *Dow v. Bradstreet Co.*, 46 Fed. 824, it was alleged in a petition for removal that a resident defendant had been joined with a non-resident defendant to prevent a removal, and that the resident defendant was a sham party, with no interest whatever in the controversy. On the right to remove the case Mr. Justice Shiras said:

"The reasoning which sustains the doctrine, which is now too firmly established to be called in question, that in determining the jurisdiction of the circuit court of the United States regard will be had only to the citizenship of the real parties in interest, disregarding wholly all nominal or immaterial parties upon the record, seems to me to be equally applicable to cases wherein it is made to appear that a party having in fact no interest in or actual connection with the subject of litigation has been joined as a party with those actually interested, for the sole purpose of defeating the jurisdiction of the federal court. A fraud of this nature, if successful, deprives the citizen of a right conferred upon him by the constitution and laws of the United States, and it certainly must be true that it cannot be perpetrated without a remedy existing for its correction. Unless this be so, then it is possible to defeat in every instance the right of removal, when the same depends upon the citizenship of the adversary parties, by the easy device of joining as a party one who has no interest in the case, but who is a citizen of the same state as the plaintiff." (Page 827.)

The case of *Prince v. Illinois Cent. R. Co.*, 98 Fed. 1, was an action brought by a brakeman, a citizen of Kentucky, for an injury inflicted by the railway company, a citizen of Illinois. He joined as defendants two employees of the company who were citizens of Kentucky. On a petition for removal it was alleged that these employees were named as defendants in fraud of the jurisdiction of the federal court and solely for the purpose of preventing a removal of the action. Later, upon an issue joined in the federal court on the subject of fraud, it was shown that neither of them had any

connection with the injury or any responsibility for it, and it was remarked:

"The court is, therefore, of opinion that the joinder of Carroll and Smith under the circumstances is equivalent to a fraud upon the jurisdiction of this court, which it would be discreditable to wink at or fail to see." (Page 3.)

It is true, as defendants in error contend, that a plaintiff is entitled to present his theory of the case in his petition and in his own way, and when he elects to bring a joint action a defendant has no right to insist that it shall be several, nor can he convert it into a several action by the answer which he files. Many cases, including *Alabama Southern Ry. v. Thompson,* 200 U. S. 206, 26 Sup. Ct. 161, 50 L. Ed. 441, affirm this doctrine, but that case, as well as those which it follows, proceeds upon the theory that the parties are acting in good faith. In that case the court in its opinion stated that there was nothing in the case to suggest an attempt to commit a fraud upon the jurisdiction of the federal court. The court, however, cautiously pointed out an exception which should be made where there were fraudulent attempts to prevent removals. It was said:

"The fact that by answer the defendant may show that the liability is several cannot change the character of the case made by the plaintiff in his pleading so as to affect the right of removal. It is to be remembered that we are not now dealing with joinders which are shown by the petition for removal, or otherwise, to be attempts to sue in the state courts with a view to defeat federal jurisdiction. In such cases entirely different questions arise, and the federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the federal courts of the protection of their rights in those tribunals." (Page 218.)

In the more recent case of *Wecker v. National Enameling Co.,* 204 U. S. 176, 27 Sup. Ct. 184, (51 L. Ed.,) the question of fraudulent joinder was brought directly before the supreme court of the United States. There

Wecker, a citizen of Missouri, brought an action against a corporation, a citizen of New Jersey, for injuries alleged to have been occasioned through negligence. He joined with the corporation one Wettengel, a citizen of Missouri. In a petition for removal it was alleged that Wettengel was fraudulently joined as a defendant for the purpose of preventing, or attempting to prevent, the defendant from removing the cause to the United States circuit court, and that plaintiff well knew that Wettengel's relation to the corporation was not such as to make him liable, and that he was not joined in good faith, but to prevent a removal. An issue was formed on the motion to remand, but the circuit court found, on affidavits which were filed, that the joinder of Wettengel was palpably groundless and fictitious, and therefore denied the motion. The supreme court, on review, held that the trial court was right in its conclusions that Wettengel was joined for the purpose of defeating the right of removal, and in doing so it was said:

"While the plaintiff, in good faith, may proceed in the state courts upon a cause of action which he alleges to be joint, it is equally true that the federal courts should not sanction devices intended to prevent a removal to a federal court where one has that right, and should be equally vigilant to protect the right to proceed in the federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." (Page 185.)

To the claim that there was no proof that Wecker knew of Wettengel's true relations to the defendant, and consequently that he could not be guilty of fraud in joining him, it was said that "even in cases where the direct issue of fraud is involved, knowledge may be imputed where one wilfully closes his eyes to information within his reach." (Page 185.)

The following authorities support the doctrine announced above: *M'Henry v. New York, P. & O. R. Co.,* 25 Fed. 65; *Collins v. Wellington,* 31 Fed. 244; *Arrowsmith v. Nashville & D. R. Co.,* 57 Fed. 165; *Warax v.*

*Cincinnati, N. O. & T. P. Ry.* Co., 72 Fed. 637; *Hukill v. Maysville & B. S. R. Co.,* 72 Fed. 745; *Landers v. Felton,* 73 Fed. 311; *Durkee v. Illinois Cent. R. Co.,* 81 Fed. 1; *Union Terminal Ry. Co. v. Chicago, B. & Q. R. Co.,* 119 Fed. 209; *Ross v. Erie R. Co.,* 120 Fed. 703; *Kelly v. Chicago & A. Ry. Co.,* 122 Fed. 286; *Boatner v. American Exp. Co.,* 122 Fed. 714; *Crawford v. Illinois Cent. R. Co.,* 130 Fed. 395; *Dishon v. Cincinnati, N. O. & T. P. Ry. Co.,* 133 Fed. 471; *Boatmen's Bank v. Fritzlen,* 135 Fed. 650, 68 C. C. A. 288; *Knuth v. Butte Electric Ry. Co.,* 148 Fed. 73; *Yawkey v. Richardson,* 9 Mich. 529, 81 Am. Dec. 769; *Illinois Cent. R. Co. v. Coley* (Ky.), 89 S. W. 234, 28 Ky. Law Rep. 336, 1 L. R. A., n. s., 370; *Southern Ry. Co. v. Sittasen* (Ind. App.), 74 N. E. 898.

The averments in the petition for removal as to the bad faith and fraudulent purposes of Weldon and Fritzlen, when accepted as true, make out a *prima facie* showing of an attempt to evade the jurisdiction of the federal court. Especially is this so when these averments are considered in connection with the statements in the pleadings of these parties which were on file when the petition was presented. According to the averments in the petition for removal the suit brought by Weldon was fraudulent in its inception and had been fraudulently maintained. While he set up a note and mortgages against the Fritzlens, it was alleged by the bank that there was no controversy between Weldon and the Fritzlens as to the note or the foreclosure of the mortgages, and that there never had been any controversy with respect to these. Since Weldon had no controversy with the Fritzlens, it follows that he had none with the bank. He is therefore a sham party, who instituted a fictitious suit for the alleged fraudulent purpose of enabling Fritzlen to litigate in the state court his causes of action against the bank set up in his answer and cross-petition, and to prevent the bank from removing such controversy to the federal court. In addition to all this, the pleadings disclose

that Weldon's alleged note from the Fritzlens became due ten days after it was made; that his mortgages were taken upon property already mortgaged for more than $32,000, and that only eleven days after the note became due, and twenty-one days after it was made, Weldon brought his sham suit, making the bank a party defendant. The answer and cross-petition of D. G. Fritzlen and the reply of Weldon were filed on the same day and concurrently alleged that the bank's note and mortgages were invalid, and, further, that it had no authority to enforce them in court. The bringing of an action by a plaintiff who has no actual controversy with the defendants, and for the purposes stated, operates as a legal fraud upon the federal court as well as upon the party entitled to a removal. The institution of a fictitious action for the purpose of bringing two defendants of diverse citizenship—one being a non-resident—into a state court, to enable the resident defendant to litigate a cause of action against the non-resident defendant in the state court, and to prevent the non-resident defendant from removing the cause to the federal court, is as much a fraud upon the jurisdiction of the federal court and upon the non-resident defendant as is the fraudulent joining of a sham defendant. Under the authorities cited such sham party may be ignored and the right of removal determined between the actual parties to the real controversy.

The averments as to fraud as well as all issues of fact raised by the petition for removal are to be tried in the federal court alone. On a petition for removal the only question for a state court to decide is one of law; that is, whether, admitting the facts alleged in the petition and disclosed by the record to be true, the applicant has a right to a removal. (*Railway Co. v. Stone*, 70 Kan. 708, 711, 79 Pac. 655; *Removal Cases*, 100 U. S. 457, 472, 25 L. Ed. 593; *Burlington, &c., Railway Co. v. Dunn*, 122 U. S. 513, 7 Sup. Ct. 1262, 30 L.

Ed. 1159; *Kansas City .Railroad v. Daughtry,* 138 U. S. 298, 11 Sup. Ct. 306, 34 L. Ed. 963.)

· Was the second petition filed in time? It is contended that as it was not filed at or before the time when the bank.was required under the code to answer Weldon's petition it was filed too late. If the fraudulent conduct of Weldon and Fritzlen occasioned the delay of the bank in setting up their fraud as a ground for removal they should not be ˙ allowed to take advantage of the delay and of their own wrong, especially where the bank asked for removal as soon as their fraud was uncovered.

In *Powers v. Chesapeake & O. Ry. Co.,* 65 Fed. 129, where the facts showed that a joinder and subsequent dismissal were a mere device of the plaintiff to defeat a removal by a non-resident defendant within the statutory time, it was held that˙ plaintiff was estopped to · assert the delay˙ as an objection to˙ a removal. Judge Taft said:

"It has been several times decided by the supreme court that the time for removing the case, fixed by the statute, is not indispensable to the jurisdiction of the federal court, but that it may be waived by the consent and acquiescence of the parties, and that a party may be estopped by his conduct to allege it as an objection to removal." (Page 133.)

The supreme court of the United States, in *Ayers v. Watson,* 113 U. S. 594, 5 Sup. Ct. 641, 28 L. Ed. 1093, had before it the question whether a party might waive a delay or be estopped from objecting that the steps for removal had not been taken within the prescribed time, and it was held that diverse citizenship and some other grounds were jurisdictional and absolutely essential, but that the time of applying for a removal and the proffer of a bond were modal and formal and might be waived either expressly or by implication. In speaking of the time of application for a removal Mr. Justice Bradley. said that "it does not belong to the essence of the thing; it is not, in its nature, a jurisdictional mat-

ter, but a mere rule of limitation" (p. 599); and so the doctrine of estoppel was applied. The subject was again considered in *Northern Pacific Railroad Co. v. Austin,* 135 U. S. 315, 10 Sup. Ct. 758, 34 L. Ed. 218, where the court remarked:

"As the time within which a removal must be applied for is not jurisdictional, but modal and formal, (*Ayers v. Watson,* 113 U. S. 594, 598, 5 Sup. Ct. 641, 28 L. Ed. 1093), it may, though obligatory to a certain extent, be waived. And as, where a removal is effected, the party who obtains it is estopped upon the question of the time, so, if the conduct of the plaintiff in a given case were merely a device to prevent a removal, it might be that the objection as to the time could nôt be raised by him." (Page 318.)

The question came before the court in the later case of *Martin v. Baltimore & Ohio Railroad,* 151 U. S. 673, 14 Sup. Ct. 533, 38 L. Ed. 311, and the court, in commenting on the decision in the Ayers case, noted the fact that the estoppel was applied to the removing party, but decided that it was applicable to either party, and remarked that the decision in that case had never been doubted or qualified. In speaking of Mr. Justice Bradley's decision it was said that "his whole course of reasoning leads up to the conclusion that the time of removal, not being a jurisdictional and essential fact, is a subject of waiver and of estoppel alike." (Page 690.) In *Connell v. Smiley,* 156 U. S. 335, 15 Sup. Ct. 353, 39 L. Ed. 443, Mr. Chief Justice Fuller said:

"Whether the petition for removal was filed in time it is immaterial to consider, as neither Tenney nor Lay, who petitioned for removal, nor Connell, who consented as a party and participated as their attorney, can now raise the objection." (Page 339.)

In *Danvers Savings Bank v. Thompson,* 133 Mass. 182, a petition for removal was denied because one of the defendants was a citizen of the same state as the plaintiff. Later it was made to appear that this defendant had released all his interest in the subject-matter of the suit before the decision on the petition

for removal had been made. This fact was not known at the time to the non-resident defendant, and although known by the plaintiff he did not disclose the fact. A rehearing of the petition for removal was asked for and obtained. The court said:

"The defendant Thompson filed his petition for removal in due time. At the time it was filed he was entitled, upon the real facts of the case, to invoke the jurisdiction of the federal courts, he and the plaintiff being citizens of different states. The concealment by the plaintiff of a vital fact ought not to prejudice the defendant. It was a fraud upon him and upon the court.

"We are of opinion that, upon the discovery of the real facts, the defendant became entitled to a rehearing upon his petition for removal; and that the former rescript and order should be vacated and set aside." (Page 184. See, also, *Powers v. Chesapeake & Ohio Railway,* 169 U. S. 92, 99, 18 Sup. Ct. 264, 42 L. Ed. 673.)

If the estoppel were overlooked the objection to removal should nevertheless be overruled. The failure to petition for removal at or before the time for answer does not necessarily preclude a removal. It is enough that it is asked for as early as the record in a case or the acts of the parties show it to be removable. A discovery that an honest mistake as to parties had been made, an increase in the demand for judgment, the dismissal of a defendant, or the amendment or filing of a pleading disclosing that the case is a removable one, will justify an order of removal if upon the disclosure a party promptly files his petition.

In *Powers v. Chesapeake & Ohio Railway,* 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673, where a second petition for removal had been filed, it was said that the provision as to the time for filing a petition for removal could not be literally applied; that to do so would be inconsistent with statute, and utterly defeat all right of removal in many cases. It was said:

"The reasonable construction of the act of congress, and the only one which will prevent the right of re-

moval, to which the statute declares the party to be entitled, from being defeated by circumstances wholly beyond his control, is to hold that the incidental provision as to the time must, when necessary to carry out the purpose of the statute, yield to the principal enactment as to the right; and to consider the statute as, in intention and effect, permitting and requiring the defendant to file a petition for removal as soon as the action assumes the shape of a removable case in the court in which it was brought." (Page 100. See, also, *Guarantee Co. of North Dakota v. Hanway*, 104 Fed. 369, 44 C. C. A. 312.)

When the first petition for removal was filed the fraudulent purpose and conspiracy of Weldon and Fritzlen to defeat the jurisdiction of the federal court and to prevent the litigation of the bank's controversy with Fritzlen in that court were not apparent. The only sources of information were the averments of Weldon's petition that the note sued on and to secure which the mortgages were given was payable within ten days and the fact that the suit was instituted on the note and mortgages eleven days after they matured. These facts, taken in connection with others which occurred subsequently, point to the fraudulent purpose; but, standing alone, they were not sufficient to charge the bank with notice of the fraudulent scheme nor to put it upon inquiry. The bank did not know from Weldon's petition what course the Fritzlens would pursue. It could not know that D. G. Fritzlen would practically admit Weldon's claim, nor that he would join him in asserting that its note and mortgages were void, nor yet that he would endeavor to litigate with the bank in that suit any claim he had against it. If the bank had ventured to allege a fraudulent conspiracy to evade federal jurisdiction of a controversy between it and Fritzlen—a violent supposition, since there was then no such controversy—how could it have been proved? Fritzlen might have responded: "I have not questioned your note and mortgages, nor indicated a purpose to contest them with you in the Weldon or any other suit. Why should you impute fraud to me merely because

Weldon holds or claims to hold past-due paper against me upon which he has brought suit?" And Weldon most assuredly would not have divulged the fraudulent purpose of his suit. So at the time the bank filed its first petition for removal the record in the case did not show the case to be removable.

But when Weldon's reply and the answer and cross-petition of D. G. Fritzlen were filed—both of which were filed on the same day and attacked the validity of the bank's note and mortgages on the same ground— the conspiracy and fraudulent purpose of Weldon and Fritzlen were uncovered, and the record revealed Weldon's suit to be fictitious and without merit. Within a few days thereafter the bank filed its second petition for removal, upon the ground of diversity of citizenship, charging the fraud as disclosed by the record. As an excuse for not filing its second petition immediately the bank states therein that it did not learn of the filing of these pleadings until June 4, 1904, nine days after they were filed, and further alleged that "the defendant, Boatmen's Bank, further avers and states that the defendant Fritzlens herein were and have been in default from the time of the institution of this suit until the filing of said separate answer herein, and that by agreement between plaintiff and defendants Fritzlen the said separate answer of D. G. Fritzlen was withheld and not filed until after the remanding of this cause on the first petition filed by this petitioner, so as to prevent it being made to appear while this action was pending on said former petition in the United States court that this suit was maintained for the fraudulent purposes aforesaid, and that the controversies herein were wholly between citizens of different states." It therefore clearly appears that the bank was diligent and filed its second petition for removal as soon as the record showed the case to be a removable one.

But there is an additional reason why the second petition for removal should have been allowed, which is,

that it was filed within the time in which the bank was required to plead to Fritzlen's answer and cross-petition.   Admitting the allegations of the second petition for removal to be true, as we have assumed throughout, Weldon was not a real party in the action and should be eliminated therefrom.   The only real controversy, then, was between the Fritzlens and the bank.   D. G. Fritzlen's answer and cross-petition, the first pleading filed as between him and the bank, attacked the validity of the note and mortgages held by it and asked to have them adjudged void, and then set up the counter-claims upon which a judgment for money was asked.   The bank took the negative side of these propositions.   In considering an application for removal the court may inquire into the nature of the controversy and the interests of the various parties, and arrange them on the record according to their interests, without regard to the positions assigned to them by the pleader.   (*Removal Cases,* 100 U. S. 457, 25 L. Ed. 593; *Pacific R. R. v. Ketchum,* 101 U. S. 289, 298, 25 L. Ed. 932; *Evers v. Watson,* 156 U. S. 527, 532, 15 Sup. Ct. 430, 39 L. Ed. 520; *Dawson v. Columbia Trust Company,* 197 U. S. 178, 25 Sup. Ct. 420, 49 L. Ed. 713; Black's Dill. Rem. of Causes, § 90.)

Within the rule stated the Fritzlens should be treated as plaintiffs and the bank as a defendant. Treating D. G. Fritzlen's pleading, then, as an initial one, the bank's second petition for removal, having been filed before it was required to answer, was in time.

It follows that the ruling denying the second petition for removal and holding the case for trial was erroneous, and for that reason the judgment is reversed.