## BAILEY v. TEXAS CO.
### No. 168.

Circuit Court of Appeals, Second Circuit.
Jan. 12, 1931.

See also 34 F.(2d) 829.

Haskell, Lyon & Block, of New York City (Herman Block, of New York City, of counsel), for appellant.

Frederick R. Graves, of New York City (James A. Gray and William S. Butler, both of Brooklyn, N. Y., of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff, an alien, sued the defendant in the state court, along with two steamship companies which operated a steamer on which he was an oiler. The defendant is a Texas corporation; one of the steamship companies, a New York corporation; the other, a New Jersey. The complaint alleged that the steamer on which the plaintiff worked, was alongside a wharf of the defendant in New Jersey, loading or discharging oil, and that while returning to it in the night he had fallen and hurt his foot. This it alleged was due to the defendant's failure to provide him with a safe way back and forth along the wharf between the steamer and the street. He demanded judgment against all three defendants under the Jones Act (46 USCA § 688). The plaintiff served the defendant, which in due course removed the cause to the District Court for the Eastern District of New York on the ground that the action against it was a separable controversy between an alien and a citizen, completely determinable between the two, and not within the Jones Act. It does not definitely appear whether the other two defendants were served, but eventually they appeared, and tried the cause in the District Court.

Some four and a half years after the removal—the delay not being explained—the defendant answered, and the cause came on for trial in May, 1930. The plaintiff proved that he was a seaman employed upon the steamer, which had been made fast alongside the defendant's wharf, and that on the night in question a ladder, set midships on the ship's starboard side, led to the ground at an incline, the end being a foot or more beyond the stringpiece. Along the wharf was a series of covered warehouses, having a continuous platform at their sides on which one might walk, about four and a half feet above the pier. Between the platform and the stringpiece were two sets of tracks, one a railway track of usual gauge along which freight cars might pass to fill or discharge the sheds on one hand and steamers on the other; the other track consisting of a rail on the outside of each of the railway tracks, on which a moving crane could pass astride them.

On the night in question a flat car stood on the railway track opposite the ladder, onto which one could step from the fifth rung by a stride whose distance the plaintiff said was about six inches, but which was certainly much more than that. The plaintiff left the ship during the day by stepping from the ladder to the flat car, walking across it to the warehouse platform, along this to its end, and finally to a gate which opened upon the street. There was another way out along the track beside the stringpiece, and, so far as appears, there were no other cars upon the railway track, except that on which the plaintiff stepped to cross over to the platform. Lights were burning on the warehouses at intervals Having gone out that way, he came back to board the ship by the same route in the evening. As he stepped from the flat car to gain the fifth rung of the ladder, his foot dislodged a loose piece of iron piping which lay across his path and tripped him. When he fell to the ground, the pipe followed him, striking his foot. This was the injury of which he complained.

The Judge tried the case against the defendant as an action to recover for injuries to an "invited person." He dismissed his complaint against the two steamship companies, but left it to the jury to say whether the defendant had made a reasonably safe passage for seamen to and from the ship, and whether the plaintiff had been negligent of his own safety. The jury brought in a verdict for the plaintiff, on which the judgment was entered from which the defendant appealed. The appeal raises three questions; the jurisdiction of the District Court, now for the first time challenged; the sufficiency of the evidence to make out a case for the jury; the plaintiff's own negligence as a bar.

If the District Court had no jurisdiction, we must reverse the judgment and remand the cause to the state court, although it is the defendant, on whose petition it was removed, which now raises the point. Had the plaintiff, an alien, sued only the defendant, a nonresident citizen, in the state court, it

could have removed the action. Lee v. Chesapeake & Ohio Ry. Co., 260 U. S. 653, 43 S. Ct. 230, 67 L. Ed. 443. Had the defendant appeared, the plaintiff might also have sued it originally in the District Court, whose jurisdiction, as distinct from the proper venue, depended only upon the citizenship of the parties (section 41, subd. 1, title 28, U. S. Code [28 USCA § 41, subd. 1]). But the defendant could not remove the cause, even though it was a separable controversy, as certainly it was. In the first place it was not between citizens of different states. Laden v. Meek, 130 F. 877 (C. C. A. 6); Creagh v. Equitable Life Assurance Soc. (C. C.) 88 F. 1; see, also, King v. Cornell, 106 U. S. 395, 1 S. Ct. 312, 27 L. Ed. 60. Again, if a separable controversy, its removal brings along in its train the whole litigation to the federal court. Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514; Torrence v. Shedd, 144 U. S. 527, 12 S. Ct. 726, 36 L. Ed. 528; Gainesville v. Brown-Crummer Inv. Co., 277 U. S. 54, 48 S. Ct. 454, 72 L. Ed. 781. Hough v. Société Electrique (D. C.) 232 F. 635, appears to have disregarded this rule. In the case at bar, this would require the removal of the cases against the steamship companies, which the statute forbids (section 71, title 28, U. S. Code [28 USCA § 71]). It may be, therefore, that the removal was improper for this reason as well, though, perhaps, when as here the joinder is of independent actions against separate defendants (section 211, N. Y. Civil Practice Act), it may be that the separable controversy alone is removed, and the rest are left in the state court. Lucania Societa v. U. S. Shipping Board (D. C.) 15 F.(2d) 568. There is at least a plausible reason for distinguishing joinders of this sort from those alone allowed when the removal statute was enacted. We need not decide this, for in any case the removal here was not authorized for the first reason.

However, though the action was not removable, the District Court got jurisdiction over it, if both parties agreed, as they did. In such a case the mutual consent, so evidenced, does not confer substantive jurisdiction, as of course it cannot, but the resulting situation is equivalent to initiating an action in the District Court in which the defendant appears. The Supreme Court originally held the opposite (Torrence v. Shedd, 144 U. S. 529, 12 S. Ct. 726, 36 L. Ed. 528; Martin v. Snyder, 148 U. S. 663, 13 S. Ct. 706, 37 L. Ed. 602), and we followed in Juillard v. Barr (C. C. A.) 177 F. 921, and said as much obiter in Dickinson, etc., Co. v. Dickinson (C. C. A.) 29 F.(2d) 493, 494.

But the reverse was held in Baggs v. Martin, 179 U. S. 206, 21 S. Ct. 109, 45 L. Ed. 155 (see, also, Gableman v. Peoria, etc., Ry. Co., 179 U. S. 335, 21 S. Ct. 171, 45 L. Ed. 220), and this has become the generally accepted doctrine [Guarantee Co. v. Mechanics', etc., Co., 80 F. 766, 771 (C. C. A. 6); Toledo, etc., Ry. Co. v. Perenchio, 205 F. 472, 475 (C. C. A. 7); Handley-Mack Co. v. Godchaux Sugar Co., 2 F.(2d) 435, 436, 437, (C. C. A. 6)]. Judge Knappen's opinion in the last case seems to us conclusive. Indeed we cannot see any reasonable ground to distinguish the effect of such a removal from one made after the time allowed by the statute, in which event it is settled that, if the plaintiff consents, the District Court has jurisdiction. French v. Hay, 22 Wall. 238, 22 L. Ed. 854; Ayres v. Watson, 113 U. S. 594, 597–599, 5 S. Ct. 641, 28 L. Ed. 1093; Martin v. B. & O. R. Co., 151 U. S. 673, 688–691, 14 S. Ct. 533, 38 L. Ed. 311. We conclude therefore that Baggs v. Martin has overruled Martin v. Snyder and Torrence v. Shedd, and that when the plaintiff goes to trial without asking for a remand, the cause being one of which the statute gives the court jurisdiction, it may proceed to judgment. We need not consider whether the actions against the steamship companies were ever before the District Court; they were dismissed, and the plaintiff has not appealed.

Coming to the merits, we think that the plaintiff was more than a licensee; he was an "invited person." The ship came alongside the wharf on the defendant's business; she was to lade or discharge the defendant's oil. The crew were as much "invited," as the ship herself, and they would not remain on board all the time she lay there. On the contrary, their business or leisure might take them ashore, and they had no way of reaching the street, except over the wharf. Harvey v. Old Dominion S. S. Co., 299 F. 549 (C. C. A. 2); Quinn v. Staten Island R. Transit Co., 224 N. Y. 493, 121 N. E. 340; Swords v. Edgar, 59 N. Y. 28, 17 Am. Rep. 295. Had there been a single path, well indicated, by which they could come and go, probably the defendant's duty would have been limited to making that safe (Pallocco v. Lehigh Valley R. Co., 236 N. Y. 110, 140 N. E. 212), but this was not so. While the defendant was not bound to anticipate that seamen would wander at random about the wharf, it was charged with anticipating that they would choose the most convenient route.

They must go down the ladder, and when they **found** themselves **on** the ground a

straight way led to the gate. Normally, that was what they would take, and the measure of the defendant's care was to make it reasonably safe for active, alert men. However, on the night in question the flat car was left directly in front of the ladder in such a position that on the defendant's own measurements the distance was about two feet from its foot to the edge of the car platform, four and a half feet above the ground. A seaman might quite naturally prefer a step from the fifth rung to the platform to making his way between the ladder and the car. The length of his stride depended on where the ladder's foot was, and what was its incline. The plaintiff says the foot was nearer the crane rail than the stringpiece; if so, the fifth rung of a ladder twenty feet long was probably no more than three feet from the car platform, and offered an easy step by which to gain the car. It appears to us that a jury might say that this was a path which any one must anticipate a seaman might choose rather than to go to the foot of the ladder and pass between it and the car.

To allow a loose piece of iron piping to lie on the car opposite the ladder was to interpose an obstacle, which again reasonable men might think unsafe. The wharf was lighted, it is true, but the plaintiff says that the lamps gave little light upon the car, and in any event they would not show that the pipe was free to move. We might ourselves have concluded that the plaintiff was in liquor, as the defendant tried to show, and that he tripped for that reason, but that was plainly a question for the jury. It seems to us on the one hand that they might have found him not guilty of contributory negligence, and on the other that the defendant should either have moved the car beyond the ladder, have had the ladder itself moved, or have taken the pipe out of the path.

Judgment affirmed.